SIOUX FALLS ADJUSTMENT CO., Respondent, v. PENN SOO OIL CO., Appellant.

(220 N. W. 146.)

(File No. 6089. Opinion filed June 30, 1928.)

78

*Lyon, Bradford & Grisby,* of Sioux Falls, for Appellant.

*Jones, Matthews & Fitzpatrick,* of Sioux Falls, for Respondent.

POLLEY, J. In this action plaintiff seeks to recover $691.91 on a claim assigned to it by the Acme Oil Company. The claim is for the value of two carloads of fuel oil sold to defendant by said Acme Company. Defendant admits the purchase of the oil and that it has not paid for the same, but alleges as a partial defense that during the month of June, 1924, it entered into a contract with the Acme Company for the purchase of a year's supply of fuel oil at an agreed price per gallon; that pursuant to said contract, said company sold and delivered to defendant the two carloads of oil involved in this action, but at a price in excess of that named in the contract; that said company refused to sell or deliver any oil at the price named in said contract, whereupon defendant was obliged to go into the open market and buy the remainder of its year's supply of oil; that the price of oil had advanced, and it was obliged to pay and did pay $206.66 more for its supply of oil than it would have had to pay at the price fixed by said contract. Be-

fore the trial, defendant made a written offer of judgment to plaintiff for $501.91.

■ Plaintiff denied the making of the said contract as alleged by defendant, and whether there was such a contract is the only question necessary to determine in this action. The facts relative to the making of said contract are as follows:

On the 14th day of June, 1924, one F. R. Houchin, a traveling salesman for the Acme Company, called upon the defendant for the purpose of making a contract for the sale of defendant's supply of fuel oil for the following year. Mr. Rohde, the defendant's manager, advised Houchin that he was in correspondence with other oil companies, and that it had been offered similar oil at a lower price than that fixed by Houchin, advising Houchin what that price was. Houchin thereupon advised Rohde that he would take the matter up with the Kansas City branch of his company. He thereupon wired to Mr. E. F. Bergolte, the manager of the Acme Oil Company's Kansas City office, that he had two contracts pending at Sioux Falls, but the other companies were offering to sell at a lower price per gallon than he was authorized to sell, and that he must meet that price or lose the business. Bergolte wired back to Houchin as follows: "Meet competition and book the business." On June 16th Houchin, pursuant to said wire, advised defendant that he was authorized to meet the price that had been made to defendant by other companies. Houchin thereupon presented to defendant the contract herein involved, which, among other things, provided for the sale of 15 to 20 tank cars of fuel oil each month during the period from June 26, 1924, to June 21, 1925, at the price therein specified. It also contained the following provision:

"It is understood and agreed that this contract when executed by buyer, and by seller's branch office, and approved by seller's general office at Chicago, Ill., not later than ———, 192—, contains all the terms of agreement between the parties, and that any oral conditions or understandings, additional to or at variance with the foregoing, shall be void and of no effect.

"Acme Petroleum Company,

"By ————

"Branch Office ————

"Kansas City, Mo.,

"Dallas, Texas.

"Accepted: Penn Soo Oil Co., By U. E. Rohde, Mgr."

Houchin retained this contract and forwarded it to the Kansas City branch office, but he left with Rohde a memorandum setting out the conditions of the contract, and also containing the following provision:

"Subject to Seller's confirmation by general office or branch office.

"[Signed] ————, Customer.
"[Signed]  F. R. Houchin, Salesman."

This transaction took place on the 16th day of June, 1924. Defendant received no notice of the rejection or approval of the contract, but assumed that the contract had been approved; and during the month of August the Acme Company shipped defendant the two carloads of oil involved in this case.

About the month of June, 1922, defendant and the Acme Company had entered into a contract which in all material respects was similar to the one just set out. No notice was ever given to defendant that said contract had been confirmed or approved by either the branch office or the general office of the Acme Company, but its terms were fully carried out by said company. Again, during the summer of 1923, a similar contract was entered into, and its terms carried out during the following year, although the same never was formally approved or accepted by the Acme Company. That company knew that defendant was relying upon his contract with it for its current year's supply of oil at the price fixed by that contract, and also knew that defendant had refrained from making a contract with another oil company on equally as favorable terms until after the price of oil had advanced. By retaining the contract for something like 60 days without giving defendant any notice that it was not accepted, just as it had done on the two previous occasions, defendant had a right to assume that the Acme Company had approved the contract and would carry out its terms as it had done on the former occasions, and that company will be held to have ratified and approved said contract.

There is no possible doubt upon the record before us that the Acme Company fully intended to ratify and carry out the terms of the contract just as it had done during the two previous years, and, had it not been for the advance in the price of oil, no attempt would ever have been made to avoid said contract because it had not been formally ratified.

██ Plaintiff should be given credit for the value of the two carloads of oil at the price specified in the contract. From this amount should be deducted the difference between the value of the oil purchased by defendant at the price it was obliged to pay and what it would have paid at the price specified in the contract. This would give the amount, less interest, that defendant owed plaintiff at the time defendant made its offer of judgment. As this was less than the amount stated in the offer of judgment, defendant is entitled to its taxable costs in this court and in the trial court.

The judgment and order appealed from are reversed, and the cause will be remanded to the trial court, with directions to enter judgment in conformity herewith.

BURCH, P. J., and SHERWOOD and BROWN, JJ., concur.

CAMPBELL, J. (dissenting). I do not believe there was any contract in this case. It seems to me that the writer of the majority opinion, in an effort to lend some show of support to a result arbitrarily determined to be reached, has grossly distorted the facts as they appear from the record. The second finding of fact of the trial court in this case was as follows:

"That on June 16, 1924, the defendant, upon the solicitation of a salesman representing the Acme Petroleum Company, the plaintiff's assignor, suggested, signed, and tendered for approval a postdated written and printed offer to buy distillate in carload lots, at a definite price, for the ensuing season, which contract contained the provision that 'it is understood and agreed that this contract, when executed by the buyer and by the seller's branch office, and approved by the general offices at Chicago, Ill., contains all the terms and agreements between the parties, and that any oral conditions or understandings additional to, or in variance with, the foregoing, shall be void and of no effect,' but the said tendered contract was never executed by the seller's branch office, nor approved by the seller's general office in Chicago, Ill., although the same was submitted to them for signature and approval."

The judgment of the trial court should be affirmed, unless we can fairly say that this finding is contrary to the clear perponderance of the evidence. Reading the evidence set out in the briefs, I think that in many particulars it utterly fails to support a number of the conclusions drawn and statements made in the opinion

as to the facts. Viewing the facts as they appear to me from the briefs filed in this cause, I am not only unable to say that there is a clear preponderance of the evidence against the findings of the trial judge, but I fail to see how he could have found otherwise than he did. I think the judgment and order appealed from should be affirmed.