TERMINAL GRAIN CORPORATION, a corporation, Plaintiff and Appellant,

v.

E. E. ROZELL, Defendant and Respondent.

No. 12341.

Supreme Court of South Dakota.

Dec. 20, 1978.

Charles A. Wolsky, Vermillion, for plaintiff and appellant.

John F. Murphy of Donley & Murphy, Elk Point, for defendant and respondent.

ZASTROW, Justice.

Terminal Grain Corporation (Terminal Grain) brought this action alleging that E. E. Rozell (Rozell) breached two contracts for the sale of corn. The trial court concluded that Terminal Grain and Rozell had not entered into binding contracts and dismissed Terminal Grain's complaint. We affirm.

Terminal Grain began dealing with Rozell in late 1973. From December, 1973, through November, 1974, Terminal Grain purchased thousands of bushels of corn from Rozell in six separate transactions. The procedure was always the same. Ro-

zell would contact Terminal Grain. After discussing the bid and pertinent details Terminal Grain would complete a "confirmation" form and mail the original and one copy to Rozell. Defendant Rozell would sign and return one copy to Terminal Grain. Shortly thereafter Terminal Grain would send a card to Rozell verifying the amount and delivery date of the corn. On each occasion Rozell would deliver on schedule.

On July 3, 1975, Rozell called Terminal Grain's grain buyer Robert Hughes, said "I would like to sell 5,000 bushels of corn," and inquired of Terminal Grain's current bid for corn. The two men then discussed Terminal Grain's discount rates for moisture content and delivery dates, with Hughes writing the pertinent information from the conversation on a "confirmation" form. The original and one copy of the confirmation were mailed to Rozell. The front of the confirmation states that "receipt of this confirmation by the Seller without immediate notice to us, by wire, of error, is acknowledgment of the acceptance of the condition of this confirmation." Rozell did not call Terminal Grain to request any modifications or changes and did not sign and return the "confirmation form" to Terminal Grain, as was his usual practice, nor did Terminal Grain send the verification card.

On July 8, 1975, Rozell again called Terminal Grain, said that he would like to sell 5,000 bushels of corn, and asked for Terminal Grain's bid. Following the discussion on price, discount, and delivery dates, Hughes mailed a confirmation form to Rozell. Rozell again neither signed or returned nor requested modification of them. Terminal Grain did not send the verification card at this time.

Immediately after Hughes' conversations with Rozell, Terminal Grain sold 10,000 bushels of corn on the Chicago Board of Trade. Rozell did not deliver any of the corn in December, 1975, the month Hughes and Rozell discussed for delivery. Hughes successfully contacted Rozell in mid-February, 1976, and was advised that Rozell had no intention of delivering the corn because

he had not signed any contracts. After Rozell's attorney indicated that Rozell would not deliver any corn, Terminal Grain purchased "cover" corn and commenced this suit.

The facts recited are undisputed and are essentially those found by the trial court. From them the trial court concluded that Terminal Grain and Rozell had a customary way of doing business that was not followed on the two occasions in question. What Terminal Grain labeled "purchase confirmations", the trial court labeled "offers to purchase" which Rozell did not accept and had no duty to reject by giving notice to Terminal Grain.

Terminal Grain argues that oral contracts, perhaps by implication, were formed July 3 and July 8 after Rozell stated that he "would like to sell 5,000 bushels." The trial court found that after Rozell made this statement the parties discussed discounts and delivery, and that Hughes then mailed a proposed contract to Rozell which was never signed and returned to Terminal Grain as was the custom between the parties. The trial court found no acceptance of the proposed contract by Rozell. In addition, the court found that Terminal Grain did not verify the transaction by sending a card to Rozell.

Our review in this action is limited. The findings of fact of the trial court "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." SDCL 15–6–52(a). On review, the successful party is entitled to the benefit of his version of the evidence and of all inferences fairly deducible therefrom which are favorable to the court's action. *Potter v. Anderson,* 1970, 85 S.D. 142, 178 N.W.2d 743. We do not decide whether this court would have made the same findings as the trial court did. We review the evidence to determine whether we are left with a definite and firm conviction that a mistake has been committed. *In re Estate of Hobelsberger,* 1970, 85 S.D. 282, 181 N.W.2d 455.

We are not convinced that a mistake has been made. The trial court found that there was no evidence indicating Rozell's acceptance of the terms of Terminal Grain's offers to purchase and concluded that there were no contracts between the parties. The evidence of the parties' past dealings was admissible to prove that Rozell had not authorized or caused Terminal Grain to regard his silence as acceptance. *Sioux Falls Adjustment Co. v. Penn Soo Oil Co.,* 1928, 53 S.D. 77, 220 N.W. 146; 17 Am.Jur.2d Contracts § 47. The evidence indicates that the telephone conversations between the parties were preliminary negotiations. See *Elkader Cooperative Co. v. Matt,* 1973, Iowa, 204 N.W.2d 873. When Hughes sent the "purchase confirmation" containing the specifics of the negotiations to Rozell, Terminal Grain was making its offer. Only by signing and returning the form could there be a valid acceptance in these two instances. Rozell's silence and inaction would only be construed as assent to the terms of the "purchase confirmation" (i. e., contract) if Rozell had previously given Terminal Grain reason to understand that his silence was assent and if Terminal Grain so understood. 1 Williston on Contracts, § 91. Although there is evidence supporting Terminal Grain's position, we conclude that the trial court's finding that Rozell did not accept Terminal Grain's offer is not clearly erroneous. Because of this finding, the only logical conclusion is that no contracts existed. Thus, it is unnecessary to discuss the applicability of the statute of frauds and equitable estoppel.

The judgment is affirmed.

DUNN and MORGAN, JJ., concur.

PORTER, J., concurs specially.

WOLLMAN, C. J., dissents.

PORTER, Justice (concurring specially).

On July 3 and July 8, 1975, Rozell telephoned Terminal Grain. The findings of fact do not disclose that an agreement as to price per bushel was reached or that Rozell *offered* to sell for a particular price per bushel, during the telephone discussions.

Rozell therefore made no offer which Terminal Grain could accept by telephone or by a subsequent written confirmation.

I would affirm on that basis.

WOLLMAN, Chief Justice (dissenting).

As I read the testimony, defendant really does not dispute Mr. Hughes' version of the two conversations that gave rise to the contracts for the sale of corn. Accordingly, I would hold that two oral contracts for the sale of a total of 10,000 bushels of corn were entered into on the dates in question and that under the principles set forth in *Farmers Elevator Company of Elk Point v. Lyle,* S.D., 238 N.W.2d 290, defendant is estopped from raising as a defense the Statute of Frauds.