CHARLES A. HOBBS *vs.* MASSASOIT WHIP COMPANY.

Essex.   January 12, 1893. — March 1, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Contract — Retention of Merchandise — Acceptance.*

A. brought an action against B. for the price of eelskins.  A. had sent eelskins in the same way four or five times before, which skins had been accepted and paid for by B.  On B.'s testimony, it was to be assumed that if he had admitted the eelskins to be over a certain length, and fit for his business, as A. testified, and the jury found that they were, he would have accepted them; that this was understood by A.; and that there was a standing offer to A. for such skins.  *Held*, that A. was warranted in sending B. skins conforming to the requirements, and even if the offer was not such that the contract was made as soon as skins corresponding to its terms were sent, sending them did not impose on B. a duty to act about them; and silence on his part, coupled with a retention of the skins for a reasonable time, might be found by the jury to warrant A. in assuming that they were accepted, and thus to amount to an acceptance.

CONTRACT, upon an account annexed for one hundred and eight $\frac{50}{100}$ dollars, for 2,350 eelskins sold by the plaintiff to the defendant.  At the trial in the Superior Court, before *Hammond*, J., it appeared in evidence that the plaintiff lived in Saugus, and the defendant had its usual place of business in Westfield, and was engaged in the manufacture of whips.

The plaintiff testified that he delivered the skins in question to one Harding of Lynn, on February 18, 1890, who upon the same or the following day forwarded them to the defendant; that the skins were in good condition when received by Harding, 2,050 of them being over twenty-seven inches in length each, and the balance over twenty-two inches in length each; that he had forwarded eelskins to the defendant through said Harding several different times in 1888 and 1889, and received payment therefor from the defendant; that he knew the defendant used such skins in its business in the manufacture of whips; that the skins sent on February 18, 1890, were for such use; that he understood that all skins sent by him were to be in good condition and over twenty-two inches in length, and that the defendant had never ordered of him skins less than twenty-two inches in length; and that Harding took charge of the skins for him and

that he received orders through Harding, but that Harding was not his agent.

Harding, who was called as a witness, testified that he had some correspondence for the plaintiff with the defendant in reference to skins; that he acted for the plaintiff in forwarding skins to the defendant, and in receiving pay therefor, and acted for the plaintiff in giving him any information, order, or notice which he received from the defendant in reference to skins sent or to be sent.

The defendant contended that Harding acted as the plaintiff's agent. The plaintiff contended that Harding acted as the agent of the defendant, and not as his agent. On this point the evidence was conflicting, and the question was submitted to the jury, upon instructions not excepted to.

Four letters were offered in evidence, three of which, dated in 1889, showed transactions between the plaintiff and the defendant, and the fourth of which, dated Lynn, February 18, 1890, signed by Harding and addressed to the defendant, was as follows: " We send you to-day, for Mr. Hobbs, 2,050 eelskins at .05 and 300 at .02."

One Pirnie, president of the defendant corporation, called by the defendant, testified that before February 18, 1890, the plaintiff had sent eelskins four or five times by Harding to the defendant, which were received and paid for by the defendant; that the defendant agreed to pay five cents each for eelskins over twenty-seven inches in length, and two cents each for eelskins over twenty-two inches in length and less than twenty-seven inches, suitable for use in the defendant's business; that Harding was not acting for the defendant, but for the plaintiff; that the defendant never ordered the skins in question, and did not purchase them in any manner, and that no officer or employee of the corporation except himself had authority to order or purchase skins, and that he never ordered or purchased those in question; that skins came from Hobbs through Harding on February 19 or 20, 1890, and were at once examined by him, and found to be less than twenty-two inches in length, and found to be unfit for use, and that he notified Harding at once, in writing, that the skins were unfit for use, and that they were held subject to the plaintiff's order; that the skins remained some months at the defendant's place of

business in Westfield, and were then destroyed; and that the defendant received no other skins in the month of February from the plaintiff or from any other person.

One Case, the defendant's shipping clerk, and one Gowdy, the defendant's treasurer, testified that the skins sent on February 18, 1890, and received February 19 or 20, 1890, were examined by them, and were very short, in very bad shape, not fit for use, and worthless.

The judge instructed the jury that the plaintiff could not recover for eelskins less than twenty-two inches in length, nor for any of the eelskins if they were in the condition described by the witnesses for the defendant.

The plaintiff denied that he received any notice from the defendant that the skins were not suitable for use, or that they were held subject to his order.

The judge, among other instructions, also gave the following: " Whether there was any prior contract or not, if skins are sent to them (the defendants) and they see fit, whether they have agreed to take them or not, to lie back and say nothing, having reason to suppose that the man who has sent them believes that they are taking them, since they say nothing about it, then, if they fail to notify, you would be warranted in finding for the plaintiff, on that state of things."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*F. L. Evans*, for the defendant.

*J. E. Hanly & J. F. Libby*, for the plaintiff.

HOLMES, J. This is an action for the price of eelskins sent by the plaintiff to the defendant, and kept by the defendant some months, until they were destroyed. It must be taken that the plaintiff received no notice that the defendants declined to accept the skins. The case comes before us on exceptions to an instruction to the jury, that, whether there was any prior contract or not, if skins are sent to the defendant, and it sees fit, whether it has agreed to take them or not, to lie back, and to say nothing, having reason to suppose that the man who has sent them believes that it is taking them, since it says nothing about it, then, if it fails to notify, the jury would be warranted in finding for the plaintiff.

Standing alone, and unexplained, this proposition might seem to imply that one stranger may impose a duty upon another, and make him a purchaser, in spite of himself, by sending goods to him, unless he will take the trouble, and be at the expense, of notifying the sender that he will not buy. The case was argued for the defendant on that interpretation. But, in view of the evidence, we do not understand that to have been the meaning of the judge, and we do not think that the jury can have understood that to have been his meaning. The plaintiff was not a stranger to the defendant, even if there was no contract between them. He had sent eelskins in the same way four or five times before, and they had been accepted and paid for. On the defendant's testimony, it is fair to assume that, if it had admitted the eelskins to be over twenty-two inches in length, and fit for its business, as the plaintiff testified, and the jury found that they were, it would have accepted them; that this was understood by the plaintiff; and, indeed, that there was a standing offer to him for such skins. In such a condition of things, the plaintiff was warranted in sending the defendant skins conforming to the requirements, and even if the offer was not such that the contract was made as soon as skins corresponding to its terms were sent, sending them did impose on the defendant a duty to act about them; and silence on its part, coupled with a retention of the skins for an unreasonable time, might be found by the jury to warrant the plaintiff in assuming that they were accepted, and thus to amount to an acceptance. See *Bushel* v. *Wheeler*, 15 Q. B. 442; Benjamin on Sales, §§ 162–164; *Taylor* v. *Dexter Engine Co.* 146 Mass. 613, 615. The proposition stands on the general principle that conduct which imports acceptance or assent is acceptance or assent in the view of the law, whatever may have been the actual state of mind of the party, — a principle sometimes lost sight of in the cases. *O'Donnell* v. *Clinton*, 145 Mass. 461, 463. *McCarthy* v. *Boston & Lowell Railroad*, 148 Mass. 550, 552.

*Exceptions overruled.*