## LAREDO NAT. BANK v. GORDON. *

### No. 6520.

Circuit Court of Appeals, Fifth Circuit.

Dec. 5, 1932.

Martin J. Arnold, of San Antonio, Tex., and W. R. Blackshear, of Laredo, Tex., for appellant.

C. W. Trueheart, of Fort Worth, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

*Rehearing denied January 10, 1933.

BRYAN, Circuit Judge.

This is an action at law by an attorney Bernard Gordon, against his client, Laredo National Bank, to recover $12,500 as a fee agreed upon in the settlement of a suit which the attorney had brought for the bank against Abraham Rosenblum, Aaron Rosenblum, and the Abe Rosenblum Corporation. The suit against the Rosenblums was to recover $144,000 which it was alleged they and one Joseph Rosenblum had fraudulently procured from the bank by means of drafts to which were attached fictitious delivery orders falsely purporting to cover actual carload shipments of produce. Gordon brought the suit upon an agreement that he was to receive a contingent fee of 25 per cent. of the amount recovered. While the suit was pending, the bank and its local attorney entered into negotiations with the Rosenblums for a compromise settlement. During the continuance of those negotiations, and on March 4, 1930, the bank wired Gordon that, acting upon his suggestion, it would refuse to accept a proposition of settlement which the Rosenblums had made, but added "in case there should be a counter proposition from them which we may consider acceptable advise what are your minimum fees." On the same day Gordon replied by wire that he felt confident his fee could be adjusted reasonably in the light of prior arrangements and subsequent developments, but that he would welcome the bank's suggestion in regard to his fee. On March 10 the bank wired Gordon, stating that its proposition had not been accepted, but that "we must know immediately what will be your fees in the event we accept settlement offered us. Answer quick"; and Gordon replied, "Answering today's telegram twelve thousand five hundred dollars." Nothing further was said about fees pending negotiations for settlement, which continued until June 16, 1930, when the bank received in settlement of its claim against the Rosenblums about $50,000 in cash, securities of the estimated value of $94,000, and a note of Joseph Rosenblum for $66,000. On June 29 the local attorney for the bank, who lived at Laredo, Tex., addressed a letter to Gordon who lived in New York, advising that a settlement had been effected, directing dismissal of the suit which Gordon had brought in New York and which was still pending, and stating that the bank's president "will write you direct and take up the matter of your fee and its payment." On July 3, 1930, the bank's president wrote Gordon that the bank would pay a reasonable fee, but that the amount mentioned in his telegram of March 10 was beyond reason. Gordon testified that before he received this last-mentioned letter he had already dismissed the suit against the Rosenblums, in compliance with the directions of the bank's local attorney. At the close of the evidence in this case, both sides moved for a directed verdict; whereupon the trial court charged the jury to render a verdict in favor of Gordon for $12,500 with interest. After this charge was given, the bank undertook to withdraw its motion, and requested the court to submit to the jury the question whether it had accepted Gordon's offer contained in his telegram of March 10 to take $12,500 in settlement of his fee.

It is argued that the bank never became bound to pay the $12,500 fee, because it never replied to or accepted Gordon's offer to take that amount in settlement for his services. It is true that, generally speaking, an offeree has a right to make no reply to offers, and hence that his silence is not to be construed as an acceptance. But, where the relation between the parties is such that the offeror is justified in expecting a reply, or the offeree is under a duty to reply, the latter's silence will be regarded as acceptance. Under such circumstances, "one who keeps silent, knowing that his silence will be misinterpreted, should not be allowed to deny the natural interpretation of his conduct," etc. Williston on Contracts, §§ 91, 91a. It was upon the bank's insistence that Gordon agreed to accept the fee he named in his telegram, in order that the bank might go ahead with its compromise settlement. It was not until after a settlement had been made, the suit against the Rosenblums had been dismissed, and Gordon had lost all opportunity of earning a larger contingent fee, that the bank made any objection or expressed any dissatisfaction with the amount of the fee Gordon had agreed to accept in the event of a compromise settlement. Its silence amounted to conduct which misled its attorney to his detriment, for the bank could not have failed to know that Gordon was acting in the belief that the fee which he had agreed to accept would be paid without question. Under the circumstances, the bank's silence was equivalent to its acceptance of and assent to Gordon's offer to forego his contingent fee and receive instead the lump sum payment which he named. Hobbs v. Massasoit Whip Co., 158 Mass. 194, 33 N. E. 495.

The bank also contends that the trial court erred in refusing to submit the case to the jury. As each party submitted a motion without qualification for a directed verdict,

the court was authorized to grant one or the other of the motions, and error could not be assigned here, unless there was no substantial evidence to support the verdict. Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654; Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038. After the court had directed a verdict, it was too late for the bank to withdraw its motion. Parties cannot play fast and loose, or experiment with the decision of the trial court. The rule laid down in the Supreme Court cases just cited would be valueless if, after the court had acted upon the request of both parties, one party could withdraw its motion and ask to have the case submitted to the jury. National Benevolent Society v. Barker, 155 Ark. 506, 244 S. W. 720; McKinney v. Crawford, 87 Ind. App. 431, 155 N. E. 185. Appellant's motion for a directed verdict was, as stated, unconditional. It was not coupled with a request to submit any issue of fact to the jury in the event it was denied; and so cases like Empire State Cattle Co. v. Atchison, etc., R. Co., 210 U. S. 1, 28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70, and Sampliner v. Motion Picture Patents Co., 254 U. S. 233, 41 S. Ct. 79, 65 L. Ed. 240, are not in point. But, even if it be assumed that the bank was not precluded from insisting that the case should be submitted to the jury, in view of what we have already said we think it was the duty of the trial court under all the evidence to direct a verdict for the plaintiff. There was no contradiction of his testimony. It is true, of course, that an attorney ought not to take advantage of his client, or be permitted to drive a hard bargain. But the evidence shows that Gordon thought a better settlement could be made with the Rosenblums, did not suggest giving up the trial of the case, was reluctant to accept the bank's suggestion of a compromise and its taking the case out of his hands, and expressed himself as perfectly willing to let the question of his fee be postponed until the case in which he was employed was disposed of. It was only when the bank insisted upon making its own settlement that he agreed to accept a fee which was less than he would have been entitled to receive if he had been paid the contingent fee originally agreed upon. So far as this record shows, his conduct was above reproach. The duty of fair dealing applies to the client as well as to the attorney. The record before us leaves no room for reasonable doubt that Gordon was justly entitled to the verdict which the court directed the jury to render in his favor.

The judgment is affirmed.