173 So. 66

## FEDERAL LAND BANK OF NEW OR- LEANS v. BRIDGEFORTH.

### 8 Div. 785.

Supreme Court of Alabama.
Feb. 18, 1937.

Rehearing Denied March 25, 1937.

Chas. H. Eyster and W. F. Boswell, Jr., both of Decatur, for appellant.

680

J. G. Rankin, of Athens, for appellee.

THOMAS, Justice.

The trial was had on amended count 1 for money had and received.

An amendatory count differing from the original only as to dates stated under a videlicet is permissible, and is not a departure from the original complaint. Stephenson v. Allison, 165 Ala. 238, 51 So. 622, 138 Am.St.Rep. 26; Mutual Sav. Life Ins. Co. v. Alsup, 224 Ala. 111, 138 So. 824; Code, § 9513. There was no error in overruling the demurrer to the count as amended.

One who makes an offer of purchase has the right to stipulate in his offer any conditions, within the law, "as to time, place, quantity, mode of acceptance, or other matters which it may please him to insert in and make a part thereof, and the acceptance, to conclude the agreement, must in every respect meet and correspond with the offer, neither falling short of or going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand." 13 C.J. page 279, § 83; Ingalls Steel Products Co. v. Foster & Creighton Co., 226 Ala. 122, 145 So. 464; Paterson & Edey Lumber Co. v. Carolina-Portland Cement Co., 215 Ala. 621, 112 So. 245.

It is declared, that where an offer is made through an agent, the principal may reserve the right to approve the offer

and to exercise the acceptance in the specified mode indicated by the parties. Paterson & Edey Lumber Co. v. Carolina-Portland Cement Co., supra.

█ The disputed question of fact here is whether the $500 check was redelivered to defendant's agent on the proposal of purchase made of date November 14, 1934, and not that of November 20, 1934, date of the last proposal of purchase. Plaintiff contends there is a tendency of evidence supporting his view that the check was returned under his proposal of November 14th; the postscript of defendant's letter to plaintiff of date November 14th, reading as follows: "I have just learned that your check was returned to Mr. Lamar Smith yesterday. Please send us a new check when and if you return the enclosed offer to purchase. H. T. D."

After plaintiff was notified of the rejection of his first offer of purchase of date October 1, 1934, he made defendant a further offer of $18,000, incorporating same in a night letter of date November 13, 1934, reading as follows:

"1934 Nov 13 PM 10 43
"MGB 437 53 NL Dot CNTD Collect XC —Athens Ala 13
"H T Delp, Manager
"Federal Land Bank – Jackson Miss.
"Make offer suggested by your Mr. Sherling $18,000 $8000 Dec 15 & Bal as per original contract hold $500 of earnest money I shall expect a favorable and speedy reply I am trying to protect my tenants

"G. R. Bridgeforth."

In reply to plaintiff's night letter, defendant wrote him of date November 14, 1934, as follows:

"November 14, 1934.
"In re: Loan #73940 –
"A. G. Patterson
"Limestone Co., Ala.
"Mr. G. R. Bridgeforth, Athens, Alabama

"Dear Sir: Your night letter of November 13th received, in which you indicate that you are willing to purchase the above captioned property from this Bank on the basis of $18,000.00, the $8,000 cash on December 15th, and the balance payable in accordance with the terms of the original offer which you submitted to the Bank.

"As you probably know, there are other parties who are interested in purchasing this property from the Bank. As a matter of fact, the Bank has already received a bona fide offer of $18,000.00, which was declined by the Executive Committee.

"If you will make a bona fide offer of $20,000.00 for the above captioned property on the basis as provided for in the offer to purchase form enclosed herewith, I will recommend its acceptance to the Executive Committee and believe that the Committee will follow my recommendation.

"If the consideration and terms of this offer meet with your approval and it is returned to this office promptly, I assure you prompt action will be taken on its acceptance or rejection. Please do not fail to have your signature properly witnessed. Also kindly sign the promissory note attached.

"I know that you will never have an occasion to be disappointed should you become the owner of this property on the above basis, and hope that you can see fit to make the above outlined offer.

"Yours truly,
"Field Office
"H. T. Delp, Manager
"HTD; hs

"P. S. I have just learned that your check was returned to Mr. Lamar Smith yesterday. Please send us a new check when and if you return the enclosed offer to purchase.

"H. T. D."

The issues of fact tried and determined were whether the money sued for was deposited with the defendant in connection with the proposal of purchase of date November 14, 1934, and not in connection with the later proposal of date November 20, 1934. The offer of purchase at $18,000, made November 13, 1934, was not accepted by the defendant; therefore, under the terms of that proposal, the $500 was to be returned to the plaintiff. This issue of fact was decided by the jury in favor of the plaintiff.

The correspondence that followed plaintiff's night letter of November 13, 1934, and defendant's reply thereto of November 14th, 1934, is important.

On November 19, 1934, plaintiff telegraphed defendant to this effect: "Give me best terms in time and rate and release from mortgage as paid on debt $8000 cash and $12000 on time give annual payments." On the same date plaintiff received the following in reply to his telegram:

682

"Postal Telegraph

"Jackson Mississippi
"November 19 1934
"G. R. Bridgeforth, Decatur, Alabama

"Not certain we understand your wire Stop Contract form sent you called for purchase price twenty thousand dollars with eight thousand dollars cash twelve thousand dollars payable in twenty equal annual payments of six hundred dollars each plus five per cent interest payable annually Stop While twenty years time is maximum time under banks usual policy we are willing to recommend sale above basis with twelve thousand dollars balance payable in twenty-five equal annual payments of four hundred and eighty dollars each Stop First payment due in nineteen thirty-five would be six hundred dollars interest plus four hundred and eight dollars principal Stop Interest payments would decrease each year as principal reduced Stop If you desire to make such offer then change the contract form to read twenty-five years instead of twenty years and execute and send to this office

"H. T. Delp
"HTD; hs
"Serial
"CHG: Federal Land Bank of New Orleans."

Confirming these communications between plaintiff and defendant of November, 19, 1934, defendant, on the same date, wrote plaintiff as follows:

"Mr. G. R. Bridgeforth, Athens, Alabama.

"Dear Sir: After receiving your wire today' and answering it I noticed a copy of the offer to purchase form which was recently sent to you for consideration. Our wire was somewhat misleading in that I was under the impression that the form sent you was made out on the basis of $12,000 being the balance of the purchase price to be paid off in twenty equal annual installments. It is noted that the form called for $11,500.00. In other words, the $500 cash provided was added to the $8,000, cash payment due on December 15th, instead of being deducted from it.

"In order to facilitate your consideration of this proposition another offer to purchase form is being enclosed herewith for your consideration. *You will note that the cash enclosed is $500, leaving a balance of $7,500 represented by a note due on December 15th.* The balance of the sales price, $12,000, payable in twenty-five equal

annual installments. As explained to you in the wire, the granting of twenty-five years in which to pay off this balance is not in accordance with the Bank's policy and I am not certain of the final reaction of the Executive Committee members on this particular feature of the offer. However, I am willing to recommend that such an offer be accepted, and hope that it will be considered favorably by the Committee.

"You will note that the offer provides for 5% payable annually on any unpaid portion of the purchase price.

*"If you desire to make the Bank such an offer it is suggested that you promptly execute this offer to purchase form, having your signature witnessed and enclose your check for $500.00 covering the cash payment.* [Italics supplied.]

"Yours truly,
"Field Office
"H. T. Delp, Manager."
"HTD; hs.

Plaintiff testified he signed that offer of purchase and gave it to Mr. Lamar Smith. The offer of purchase contained, among other things, the following:

"Athens, Ala., November 20th, 1934
"To the Federal Land Bank of New Orleans,
"New Orleans, Louisiana.

"Gentlemen: I, G. R. Bridgeforth, hereby offer you $20,000.00 for the following described real estate in Limestone County, State of Alabama, to-wit: (describing the property).

"The purchase price of $20,000.00 to be paid as follows:

"$500.00 cash herewith.

*"$7,500.00 per promissory note due on the 15th day of December, 1934, should this offer be accepted; should I fail to make such payment* (we interpolate $7,500.00), *then the cash paid hereunder may be retained by you as liquidated damages, and this agreement cancelled at your option.*

"Balance of $12,000.00 to be evidenced by the execution of twenty-five purchase money notes of equal amounts and first mortgage or deed of trust on said land securing same upon your acceptance of this offer; one of said notes to be due on the 15th day of December, 1935, and one on the same day and month each consecutive year thereafter, with interest at 5% per annum from the 15th day of December, 1934, payable each year on the 1st day of January, 1935, on all unpaid balances. Upon the de-

livery of said notes and mortgage or deed of trust, you are to execute to me a deed to said land.

"I understand that you will prepare the necessary instruments for the closing of this sale on your usual forms and containing covenants and agreements now in common usage by you in the sale of your lands, and I agree to execute said instruments promptly at your request and to pay all expenses incident thereto.

"I further understand and/or agree

"(1) That you will give me possession of the land on the 1st day of January, 1935, unless present occupants refuse to vacate, in which event you will secure possession if possible by legal action. * * *

"(8) That this offer is to *remain irrevocable for a period of 21 days from date.*

"(9) That you may accept the remittance made herewith without being bound to the acceptance of this offer with the understanding, however, that it will be returned to me should the offer be rejected.

"(10) That this offer shall not be construed as being accepted *until it has been approved by your Executive Committee and notice of its acceptance has been mailed to me at the above address from your New Orleans office.*

"(11) That there are no other conditions or agreements except as follows:
"Witnesses:
"Lamar Smith
    "G. R. Bridgeforth
    "Purchaser." [Italics supplied.]

The record proceeds with the testimony of plaintiff as follows:

"The check that Mr. Lamar Smith returned to me was delivered to me when I made out this second proposal. I thought I indorsed it, but I didn't indorse this check; but he did bring me a $500.00 check on November 14th, with a second proposal and only the second proposal. I thought I indorsed it but I didn't indorse that evidently. That $500.00 was tendered to me in the form of a check on November 14th. I wouldn't say that check was. A check was tendered to me on November 14th, a $500.00 check. I couldn't say whether it was signed by the same firm. I used that $500.00 as a deposit or earnest money for the offer I made of November 14th. * * *

"Then on November 20th I signed this third offer. I didn't put up any actual cash money at the time of the signing of the offer. I didn't make a delivery of any check.

"Q. But at that time you already had on deposit with the Federal Land Bank, $500.00 in cash? A. On the $18,000.00 proposal. * * *

"Q. Now then you never used any of the $500.00 for making this written proposal of November 20th? A. On November 20th nothing was said about any money proposal of any kind or character. * * *

"No cash nor any description of cash was put up on the 20th. Under date of December 10th I received from the Federal Land Bank this letter dated December 10th, accepting my proposition of the purchase of $20,000.00; $8,000.00 cash."

The defendant offered in evidence the letter of acceptance of date December 10, 1934, as follows:

"Mr. G. R. Bridgeforth, 716 Brown's Ferry Road, Athens, Alabama
"In re: A. G. Patterson Property #73940–
    "Limestone County, Alabama.

"Dear Sir: The Bank accepts your offer to purchase the above property for $20,000.00, on the terms outlined in your signed offer dated November 20th, 1934.

"The papers necessary to complete the transaction will be forwarded to Mr. W. H. Barclift, Field Representative, for attention. Mr. Barclift will no doubt get in touch with you in a very short time.

"We trust the purchase of this property will prove a wise investment for you.
        "Yours very truly,
        "Field Office.
            "T. P. Watkins
                "Asst. Mgr. Ala. Division.
"lw
"cc: Mr. W. H. Barclift,
"Field Representative."

Plaintiff continued:

"After I got that letter I wrote a note to Mr. Barclift here to meet me over there at Athens on the 20th of December to close a transaction and that I expected to get some money over there on that date from the Tennessee Valley Authority. Mr. Barclift came over there and was with me on December 20th; I met him here December 20th. I did not tell Mr. Barclift here at Athens on that date, that I didn't have funds sufficient to close the deal. Mr. Lamar Smith was not here that day. I think it was after Christmas—about December 26th when I had my next conference or interview with Mr. Barclift and Mr. Smith. He met me on December 26th on the street—on the road. It was in Athens; I was going to

work. , At that time Mr. Barclift said he had the deed. I didn't see the deed and the mortgage and the note. He did not ask me to sign them; he said he had the deeds all right but I didn't see them. I made up my mind and wrote him beforehand that inasmuch as I had had so much trouble, I wanted to get my money back and start all over so I could get somewhere. He said he had the mortgage and things with him but I didn't see them. I wrote this letter dated December 26th—exhibit '9'."

The letter of December 26, 1934, from plaintiff to W. H. Barclift, an agent of the defendant, after reciting the several offers of purchase, and stating that the contract to buy was for several of his (plaintiff's) "neighbors whose farms were being flooded," that "the length of time required to complete the trade and rumors that the Federal Land Bank had sold the land to other parties or had rented the land for another year, with tenants plowing the land as evidence, have produced dissatisfaction among the men who were to put up their money" and who at one time "had put up enough to pay cash," proceeds:

"It seems to me the best thing we can do, after three months, with several changes in price and lost confidence, and as was hinted in our conversation, which could indicate that the present tenants might have some legal rights, is for the Bank to return my $500.00 and to let us try to work out a new plan, dividing the land and letting each man buy directly.

"I regret very much to be placed in this position and have done my best at great cost. I am sure that all concerned have worked hard to close up the trade. Time and the necessary bank routine do not seem to fit into our already skeptical and fearful group who have lost their homes. I would be glad to go over the matter with you and to assure you of my cooperation and I would appreciate any consideration you may be able to give.
"Yours very truly,
"[Signed] G. R. Bridgeforth
"George R. Bridgeforth."

There was no error in rejecting subsequent letters as they were beside the question now for consideration.

The record recites the following in the further examination of plaintiff as a witness:

"Q. Now then what did you use for money when you recited in that contract of November 20th that $500.00 was accompanying it? A. I thought I had answered that.

"The Court: You just answer his questions.

"A. There was no money discussed at that time whatsoever. I didn't have any money and there was no money put up no way, shape, form or fashion. I had borrowed the $500.00 I had paid.

"(Witness): When I signed that contract on November 20th, making an offer of $20,-000.00 there was nothing in my mind about any $500.00. I was trying to get something done. The people were worrying me nearly to death. Just Mr. Lamar Smith had this one and I signed it."

The witness Smith for the defendant recited the fact of several offers of purchase; that Bridgeforth said, " 'I had hoped to buy it for $18,000.00,' but he says, 'I believe I will make you an offer of $20,000.00. I want the property, it fits into my plans.' So then Bridgeforth told me to fill out a contract for $20,000.00 and he was ready to buy the property. He says 'Are you sure you can buy it for $20,000.00' and I said, 'No, I am not sure, but I will submit your offer. I have information to the effect and I am of the opinion that the Bank will accept this offer because they have already in a way committed themselves to you.' He says, 'I am ready to do business with you,' and so I got out my typewriter and filled out this contract in the back seat of my car and he signed it and gave me this check. This is the letter I let him read. * * * The check was delivered to Bridgeforth by me. When he signed this contract of November 20, 1934, he gave the check back to me. I imagine we talked about an hour down there before we fixed out a new contract. Subsequent to that I saw Bridgeforth here at Athens. I met him several times after he had signed the contract. I believe he dropped me a card and told me to meet him here in Athens on December 20th."

The card referred to read:
"Athens, Ala.
"Dec. 12/1934.
"Mr. W. H. Barclift,

"My dear Sir: The TVA will settle with me on the 20th at the Court House in Athens, Ala. at 2 P. M. Kindly meet me there with the papers made out so we (can) close the matter in a short while.
"Truly yours,
"G. R. Bridgeforth."

Witness continued:

"I didn't come to Athens on that date. Mr. Barclift was also working for the Federal Land Bank at that time. He was an all-time employee. I don't remember when it was after December 12th that I first saw Bridgeforth. I saw him on December 27th, relative to the consummation of the contract out in front of the garage over there where the railroad crosses. Mr. Barclift was with me at that time. Mr. Bridgeforth had written us a letter and told us that he didn't propose to go through with the contract, so Mr. Barclift and myself came over here to see him to find out his reasons for not desiring to close, and to close the deal if possible. Barclift had a deed and note and mortgage with him at that time. Mr. Barclift gave him the deed and told him to read it and also showed him the mortgage and note. He declined to execute the note and mortgage. He looked at the deed and said that he had decided to not take the property. He definitely told us that he would not take it."

On cross-examination this witness said:

"I said something yesterday afternoon about coming here on December 27th in which I was accompanied by Mr. Barclift, who is sitting over there. At that time Mr. Barclift, I believe, had the deed; we both handled it. I saw the deed. I first saw it about four or five days prior to that. I did not have an appointment with the plaintiff to meet him over here on December 20th to close this transaction. We were not to meet on December 20th. The first time that I personally knew of a deed being tendered to him was on December 27th. We received two letters. We received a letter from him stating that he was ready to close and to bring the papers over on December 20th, and on the next day we received a letter stating that he didn't wish to close it. That letter that we received, stating that he didn't wish to close or he couldn't close, was the letter here addressed to Mr. Barclift and dated December 26th. The day Mr. Barclift received it, he and I came over here with the deed. That was December 27th. I had authority to just accept offers and transmit them to the Bank. I didn't have any authority to close out and say they would accept the offer."

And on redirect examination:

"I received from the Federal Land Bank a return of this proposal of November 14th. I returned or delivered that proposal back to G. R. Bridgeforth telling him that the bank would not accept the proposition. That was November 20th; at the time I also delivered the check. When I redelivered this offer of November 14th and offered him the check, he kept the check in his possession for an hour or so. When he returned the check he also delivered to me the offer of purchase of November 20th."

The witness Barclift confined his conversation with plaintiff to the following:

" * * * that he had other parties that were going to put up some money that hadn't gotten together, and as quickly as the deeds and mortgage and papers and notes came, to bring them right over and he would be in a position to close it. That conversation took place in this courtroom on December 20, 1934. * * * I came back to Bridgeforth after that on December 27th. I contacted him that time just across the railroad crossing, just across from the old Post Office in Athens. At that time I had a deed and the mortgage and the twenty-five notes for execution. I presented the deed to Bridgeforth, also showed him the mortgage and mortgage notes, and made a proposal to close. I offered the papers for execution to close the transaction. I had those papers with me and I told him that I did. That deed (indicating) is the deed which I had with me, and which I tendered to him on that occasion. It was signed the Federal Land Bank, New Orleans, La., by J. H. Parker, its Vice President."

The plaintiff on rebuttal testified:

"I was here on December 20th after communicating with Mr. Barclift on December 12th to be here with the deed. I saw Mr. Barclift. I told Mr. Barclift on that occasion nothing about unreadiness except he said he wasn't ready; didn't have the deed—wasn't ready. * * *

"My letter of December 26th was my withdrawal from the proposition of purchase of November 20th."

We have indicated at length the conflicting tendencies of the evidence. McMillan v. Aiken et al., 205 Ala. 35, 40, 88 So. 135.

▪ Appellant insists that the transaction of November 20th carried the $500 deposit, and that the whole transaction showed that such payment was as *liquidated damages, and not a penalty.* This view ignores the language of the proposal of November 20th, which provides: "The purchase price of $20,000.00 to be paid as follows: $500.00 cash herewith; $7,500

per promissory note due on the 15th day of December, 1934, should this offer be accepted; should I fail to make such payment [we interpolate $7,500.00], then the cash paid hereunder may be retained by you as liquidated damages, and this agreement cancelled at your option; balance of $12,000.00 to be evidenced by the execution of twenty-five purchase money notes of equal amounts and first mortgage or deed of trust on said land securing same upon your acceptance of this offer," and also the concluding provision of defendant's letter of date November 19, 1934, calling for "check for $500.00 covering the cash payment." There was no error in the court's instruction in the oral charge, that as a matter of law it was a provision for a penalty. It follows that the refusal of defendant's written charges —charging in substance that the contract was for liquidated damages—was without error. Henderson-Boyd Lumber Co. v. Cook, 149, Ala. 226, 229, 42 So. 838. The court charged as to this:

"Of course in construing a matter of that sort, the intention of the parties is to be arrived at in this case, and it devolves on me, gentlemen, to construe the contract, and to construe what that means and the effect of it; and I hold and so instruct you that although it says it is liquidated damages, that in the eyes of the law it is not; and that it constitutes no more than a penalty, and that he shall be penalized for not carrying it out; and where that is true, then the question becomes a matter of proof as to what the damage is. Liquidated damages wouldn't require any proof because it is agreed upon, where it is liquidated damages, that it is a penalty; then the defendant had a right in this case to show, if it was correct—to show that he had suffered damages, and that he would have been entitled to damage on that by proper plea and by proper evidence of whatever actual damage he sustained by reason of his failure to carry out that contract—that offer. Now, of course, whether it be liquidated damages or penalty, the plaintiff wouldn't be liable unless he wrongfully broke his contract, and he couldn't wrongfully have breached his contract if the defendant had accepted his contract as the law required, or rather as his contract required. And here is one of the points in the case, and I instruct you that a mere letter from the company saying they accepted it, is not sufficient in this trial to show that they did accept; but in order to show that, it devolved upon the defendant to introduce evidence showing that the Executive Committee had acted upon the offer. Then if it was not accepted, then the defendant had a right to revoke or withdraw that offer within twenty-one days from the 14th day of November, unless he had waived his right to do so by subsequent conduct on his part.

"The contention of the plaintiff here is, and the evidence tends to show it if you believe it, that he did withdraw his offer, and he did it by way of a letter bearing date December 26, 1934, and you will have that letter before you and open for your consideration. In reply to that letter, however, the defendant says that it was in Athens the next day by its agent and had all the papers ready to complete the transaction, and that the plaintiff declined to do so. Well, if the plaintiff had a right to withdraw his offer at the time he claims he did, to-wit, the 26th day of December, then of course an offer to complete the sale made by the defendant through its agents after that wouldn't be effective or binding on this plaintiff."

In a case where the contract is for the payment of money, stipulations to pay or forfeit a fixed sum on default will be regarded as an agreement for a penalty, and not for liquidated damages (unless specifically stipulated). Such is the law and result for the reason that in the nonpayment of money the law fixes interest as damages, and there is no difficulty in ascertaining the damages in such case and they cannot therefore be regarded as unliquidated. Stratton v. Fike, 166 Ala. 203, 51 So. 874; Cortner et al. v. Anderson, Clayton & Co. et al., 225 Ala. 575, 144 So. 443.

Refused charge B was invasive of the province of the jury in instructing that defendant's letter of December 10th was sent "in due course of business." There is a tendency of the evidence to the contrary. That letter was not sent from the New Orleans office, but was from the "Field Office" signed by "T. P. Watkins, Asst. Mgr. Ala. Division," and indicated a carbon copy of same was sent to "Mr. W. H. Barclift, Field Representative"; was not in reply to any letter by the appellee, nor in compliance with the proposal. Therefore, no inference is raised as being written and sent in "due course of business" as sought to be instructed in

charge B. The charge was properly refused. Oil Well Supply Co. v. West Huntsville C. M. Co., 198 Ala. 501, 73 So. 899.

There was no error in the oral instruction of the court as to the obvious effect of the plaintiff's letter of December 26th. When the instruction is considered as a whole, there is no error in this and other portions of the oral charge to which exceptions were reserved.

The observations in Bay Minette Land Co. v. Stapleton, 224 Ala. 175, 139 So. 342, on the right of rescission are not controlling under the foregoing facts.

■ If there was not an acceptance as per contract, and no waiver thereof, the plaintiff had the right to indicate his withdrawal therefrom, or decline further consideration of purchase, and to so unequivocally declare his intention, as was done by his letter of December 26th. Thus other questions presented need not be discussed in detail. Britt v. Daniel, 230 Ala. 79, 159 So. 684.

We have indicated that affirmative charges requested were properly refused. The questions of fact required to be submitted for decision were duly submitted by the court.

We find no error to reverse, and the judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.