[No. 6633.   Decided October 19, 1907.]

CHARLES A. ANDRUS, *Respondent*, v. COLUMBIA & OKANOGAN
STEAMBOAT COMPANY, *Appellant*.[1]

CARRIERS—CARRIAGE OF GOODS—CONNECTING CARRIER—AGENCY—
PLACE OF DELIVERY—LIEN FOR ADVANCES. Upon the consignment of
goods to a common carrier to be carried over successive routes, the
first and succeeding carriers become the agents of the owner to make
delivery to the next carrier, and it is their duty to forward the
goods to their destination by the usual or best route, in the absence
of apparent limitation, regardless of undisclosed contracts of the
consignee with respect to the shipment; and the last carrier has a
lien for its charges and advances paid, regardless of the fact that
by mistake or otherwise the goods were sent over the wrong route
or that the consignee had a special contract with another carrier
to whom they should have been delivered.

SAME—DUTY TO FORWARD—EMERGENCY. Where a consignee of a
shipment of powder had a special arrangement whereby a certain
carrier was to transport its goods by boat from W. to R., and such
carrier sold its only boat to the only other carrier between the points
stated, an emergency arises requiring the forwarding of the powder
regardless of the consignee's previous contract with the former
carrier.

Appeal from a judgment of the superior court for Chelan
county, Steiner, J., entered August 25, 1906, in favor of the
plaintiff, after a trial before the court upon an agreed state-
ment of facts, in an action for conversion.   Reversed.

*Douglas, Lane & Douglas*, for appellant.
*Arthur P. Redman*, for respondent.

DUNBAR, J.—This is an action brought by the plaintiff as
the sole surviving member of the Charles A. Andrus Com-
pany, a copartnership, to recover for the alleged conversion
of a car load of powder, shipped to the said company from
Black River, Washington.   The case was tried upon an

[1]Reported in 92 Pac. 128.

agreed statement of facts.    The facts are in substance as follows:

That Charles A. Andrus and J. M. Hagerty were, at the time of the matters complained of, copartners engaged in a general mercantile business at Nighthawk, Okanogan county, Washington; that the defendant was a corporation, duly created and existing under and by virtue of the laws of the state of Washington, etc., and was a common carrier of goods operating a line of steamboats upon the Columbia and Okanogan rivers, and between Wenatchee, Brewster, and Riverside, on said rivers, and within the state of Washington; that at the time when the North Star Transportation Company sold its only boat to the defendant, said company was a corporation duly organized, etc.; that on the 15th day of April, 1903, J. M. Hagerty, one of the members of the firm of Charles A. Andrus Company, gave the freight agent of the Great Northern Railway Company at Wenatchee certain shipping instructions in writing, maked Exhibit A, and that said instructions were never revoked during the time of the matters complained of, which instructions were not known to the defendant; that on the 2d day of June, 1903, J. J. O'Connor, manager of the North Star Transportation Company, gave certain shipping instructions to A. A. Piper, freight agent of the Great Northern Railway Company at Wenatchee, marked Exhibit B, which will hereafter be noticed, said instructions being given without authority of either Andrus or Hagerty, except such implied authority as might arise from the relations of the parties; that on the 2d day of June, 1903, the North Star Transportation Company ceased to do business as a common carrier, and sold its only boat to the defendant; that since said time the defendant has been the only common carrier operating on the Columbia river between Wenatchee and Riverside, Washington; that on or about June 5, 1903, the Charles A. Andrus Company ordered six hundred boxes of powder from Schwabacher Hardware Company, of Seattle,

Washington, with instructions to ship the same to Charles A. Andrus Company in care of the North Star Transportation Company at Wenatchee, Washington; that said order was accepted when given; that said Schwabacher Hardware Company agreed to sell and ship the said goods as requested, said instructions not being known to defendant.

That on or about June 2, 1903, said Schwabacher Hardware Company, in execution of such order, shipped said powder from Black River, Washington, by delivering the same to the Columbia & Puget Sound Railroad at that place, said powder occupying an entire car; that at said Black River said railroad had no freight agent at the time this shipment was made; that no bill of lading or other instrument was ever given by said railroad for this shipment; that on the arrival of said car at Seattle, it was delivered to the Great Northern Railway, by which railroad it was billed as set out in the tag and transported to Wenatchee, Washington, where the said car arrived about June 27, 1903; that upon the arrival of said powder at Wenatchee, Washington, there were certain freight and cartage charges due; that said powder was delivered by the Great Northern Railway to the defendant; that said defendant paid said sum and took the powder, but without the knowledge or consent of said Andrus or Hagerty, and transported the same to Riverside; that the said powder has never been returned to the possession of the Charles A. Andrus Company, or to the said Andrus or Hagerty, but was held for advance charges, transportation and wharfage, and sold to satisfy the same, said sale not now being relied upon as a conversion in this action ; that the said powder was delivered to the defendant by said A. A. Piper; that Riverside is the head of navigation on the Columbia river and is forty miles distant from Nighthawk, Washington; that there was at said time no telegraphic communication between Wenatchee, Washington, and Nighthawk, Washington, and that the nearest telephone station was Loomis, Washington, a

distance of twelve miles from Nighthawk, Washington, between which points a stage ran every day; that during all the time of the matters complained of Charles A. Andrus Company had an arrangement with the North Star Transportation Company by which said company was to carry all its freight at a fixed rate to the nearest practicable point to Nighthawk, Washington, to wit, Brewster or Riverside; that during all of said times the said Charles A. Andrus Company was doing business at Nighthawk, Washington, and had no place of business at Wenatchee, Washington, and that the final destination of said powder was intended to be Nighthawk, Washington; that the defendant knew where the Andrus Company's place of business was.

It is further agreed that this statement of facts shall not be construed strictly, but that any fair inference from the above facts may be drawn by the court, it being the intention of the parties to submit to the court the question of whether or not, under the foregoing statement of facts, the defendant converted said powder at Wenatchee, Washington, at or about the time mentioned in the complaint. The Exhibit A, referred to above, was as follows:

"Wenatchee, Washington, April 15, 1903.
"To the agent of the Great Northern R. R., Wenatchee, Wash.:
"Dear Sir: You will please deliver all freight consigned to J. M. Hagerty, whether billed to Wenatchee, Loomis or Brewster, to the North Star Transportation Co.
"J. M. Hagerty.
"You will also deliver all freight consigned to 'The Chas. A. Andrus Co.' to the North Star Transportation Co.
"The Chas. A. Andrus Co., per J. M. Hagerty, Pres."

Exhibit B is as follows:
"Great Northern Railway Line,
"Wenatchee, Wash., Station, June 2nd, 1903.
"To A. A. Piper, Agent Great Northern Ry., Wenatchee, Wash.:
"Dear Sir: The steamer North Star having been purchased by the Columbia & Okanogan Steamboat Company and from

this date will be operated by them, this will be your authority to deliver to the Columbia & Okanogan Steamboat Company at Wenatchee any and all freight consigned to or routed via steamer North Star or North Star Transportation Co.

"Signed, North Star T. Co., Pr. J. J. O'Connor, Mgr."

Upon this statement of facts the court found as conclusions of law:

"(1) That upon the shipment of the powder from Black River said powder became the property of the Charles A. Andrus Company.

"(2) That upon the arrival of said powder at Wenatchee the shipment thereof, as directed by said Charles A. Andrus Company, through their agents the Schwabacher Hardware Co., was completed, the shipping directions having been fulfilled and executed.

"(3) That the North Star Transportation Co. was the special agent of the Chas. A. Andrus Co. for the purpose of transporting to Brewster and Riverside by its own boat goods destined for said Chas. A. Andrus Company, and that said North Star Transportation Co. had no authority either from the Chas. A. Andrus Co. or by virtue of the circumstances to enter into a new contract of affreightment with the defendant.

"(4) That the taking and carrying of said powder by the defendant from Wenatchee to Riverside was unauthorized, and by virtue of said taking and carrying and claiming a lien thereon for said carriage the defendant became guilty of a conversion thereof."

And judgment was entered in favor of plaintiff for the amount claimed.

We think, under the statement agreed upon, that the court erred in its second conclusion of law, and that the shipping of the powder was not completed when it reached Wenatchee; for it can be gathered from all the agreed statement that it was the intention to authorize the transportation company to ship the goods to the nearest point to Nighthawk, viz., either Brewster or Riverside. In fact, paragraph 17 of the agreed statement of facts especially asserts that the plaintiffs had

22—47 WASH.

no place of business at Wenatchee; that the final destination of said powder was intended to be Nighthawk, Washington.

We think also the court erred in concluding that the North Star Transportation Company had no authority, either from the Charles A. Andrus Company or by virtue of the circumstances, to enter into a new contract for the freight with the defendant. Under the circumstances of this case, there being no other transportation company that could carry the goods which the Charles A. Andrus Company had contracted for and which it was its intention and desire to have shipped to them at Riverside, the agent of said company, the North Star Transportation Company, not only had authority but it was its duty to forward the goods to their destination over the best possible route, and there was no other route and no other carrier by which they could be sent. If it did have authority, or if the Great Northern Railroad Company by reason of the authority conferred upon it by the agent of the Andrus Company, viz., the North Star Company, delivered the goods to the defendant for the purpose of transportation in accordance with the original intention of the consignor and its agent, there was no conversion of the property.

It is established law, made necessary from the character of the business, that it is the duty of common carriers to accept freight tendered by another common carrier, and that a consignor of goods to be carried over successive routes makes the first and each successive carrier his forwarding agent. This is from the necessities of the case. The consignors cannot practically travel with the goods which are shipped, and there must be some one who is responsible for transactions in regard to their shipment over the different routes. Each succeeding carrier who takes charge of the goods is responsible for the goods, and therefore becomes an agent of the consignor for the goods. It is equally well established that the last carrier has a lien for freight which he has paid to successive

carriers, and this lien is maintained even when goods have been forwarded over the wrong line and to the wrong place.

"But where, on the other hand, the owner of goods has clothed another with apparent authority to deal for him with reference to the goods, and the carrier receives the goods for such person, it is held that he is entitled to his lien.    This question has most frequently arisen in cases where the last of two or more connecting carriers claim a lien upon the goods, which is disputed on the ground that the delivery to him for carriage was unauthorized.    [It will be seen that that is the claim made in this case.]    As has been seen, where goods are delivered to a carrier for transportation beyond his own line, he has implied authority, in the absence of an apparent limitation, to send them forward by the usual route or by any customary and proper route, and where he does so the succeeding carrier, having no notice of any limitation upon the first carrier's authority, is not to be deprived of his lien because the first carrier, by mistake or otherwise, sends the goods to the wrong place or by the wrong route."    Hutchinson, Carriers (3d ed.), § 885.

The same author, on page 105, says:

"The delivery to the carrier or his agent may be made not only by the shipper in person, but also by his authorized agent.    Where the owner of goods places them in the hands of an agent to secure their transportation by a carrier, the latter, in the absence of a known limitation upon the agent's authority, is justified in considering the agent authorized to exercise all the powers necessary to effect the purpose of the agency, and the acts of the agent in that respect will be binding upon the principal, as in giving directions as to the time or manner of shipment or the terms and conditions upon which the transportation is to be undertaken."

Again, on page 147:

"When goods are delivered to the carrier for the purpose of being carried to a point beyond the terminus of its route, and for that purpose to be delivered by him to a connecting carrier in order to continue the carriage, or where it becomes necessary for that purpose to make successive deliveries from one to another upon a continuous line or succession of carriers, the

first and each succeeding carrier becomes the agent of the owner to make delivery to the next carrier; and it is incumbent upon him to do so, not only to relieve himself from further liability, but because it is a duty which he owes to the owner and which he has assumed with the acceptance of the goods."

These questions were discussed by this court in *Moses v. Port Townsend Southern R. Co.*, 5 Wash. 595, 32 Pac. 488. It was there held that, where goods were delivered to a carrier for shipment to a destination beyond the route of the carrier, the freight being prepaid, such carrier became the forwarding agent of the owner, and succeeding carriers, to whom the goods were delivered by the first carrier, were not bound by the contract between the owner and the first carrier for freight charges of which they had no knowledge. This was a stronger case against the contention of the respondent than the case at bar, for there is no question in this case, under the agreed statement of facts, that the rates of shipment by the defendant in this case were any greater than they would have been by the North Star Company. In fact, it must be presumed from the agreed statement of facts that the rate was the same. In that case it was said:

"When a consignor delivers goods to a carrier to be carried over successive routes beyond the routes of the first carrier, he makes the first carrier his forwarding agent, and the first carrier who receives the goods and directs them over the route of the succeeding carrier, is the owner's agent, and the succeeding carriers act under the authority of the owner, and this has ordinarily been held to be the rule even though the first carrier did not follow the instructions of the shipper, where the succeeding carriers acted innocently;" citing many cases to sustain the test.

In this case an emergency had arisen, viz., the merging of two competing transportation companies into one. This was the practical effect of the sale by the North Star Company of its only transportation boat to the Columbia & Okanogan Steamboat Company, and it was the duty of the Great North-

ern Railroad Company, under its instructions from the North Star Company, to do what was reasonably in its power to see that freight which had been consigned to the North Star Company was properly forwarded to its destination, especially when it followed the method pointed out by the agent of the North Star Company in delivering the freight to the Columbia & Okanogan Steamboat Company. The consignors had no place of business in Wenatchee. The freight was of a perilous character, being a carload of powder. It was the bounden duty of the company in whose charge it was to forward it by the best and most expeditious conveyance to its destination. There being no showing or intimation that the Andrus Company would pay any greater amount of freight for the shipment of its goods as they were shipped than it would have paid if shipped as originally intended, it had no equitable claim to have its goods transported from Wenatchee to Riverside for nothing. The respondent, therefore, stands upon a severe legal technical right, and must bring himself squarely within the spirit of the rule of the law which he invokes. This we do not think he has done. Under all the circumstances of the case, the goods were substantially shipped according to the original intention of the Andrus Company, and the fact that they were not carried from Wenatchee to Riverside on the same boat that it was the original intention to have them carried on, or if carried on the same boat, that the boat had changed ownership, was no substantial violation of respondent's rights and in no way injured him.

The judgment will therefore be reversed and the cause dismissed.

HADLEY, C. J., RUDKIN, ROOT, MOUNT, and CROW, JJ., concur.