## O. D. AUSTIN, Appellant, v. CHARLES BURGE, Respondent.

**Kansas City Court of Appeals, May 15, 1911.**

CONTRACTS: Newspaper Subscription. Though a person has not subscribed for a newspaper, yet if he accepts it by receiving it continuously through the mail, when he had no reason to suppose it was intended as a gratuity, an implied contract will arise that he will pay the subscription price.

Appeal from Bates Circuit Court.—*Hon. C. A. Denton,* Judge.

REVERSED AND REMANDED.

*W. O. Jackson* and *Silvers & Silvers* for appellant.

(1) Although one has not ordered a newspaper or periodical sent to him, or if his subscription has expired, yet if the paper is sent to him through the mails and he

takes it out and uses it, this raises an implied contract on his part to pay the subscription price. 9 Cyc. 258-259; Fogg v. Portsmouth Atheneum, 44 N. H. 115, 82 Am. Dec. 191; Goodland v. LeClair, 78 Wis. 176, 47 N. W. 268; Ward v. Powell, 3 Harr. (Del.) 379, 7 Am. and Eng. Ency. Law (2 Ed.), p. 130, note. (2) The two instructions offered by the plaintiff which were refused by the court were in keeping with the doctrine as above announced. The instruction given by the court for the defendant told the jury that there must be a contract between the plaintiff and defendant to the effect that the defendant should pay for the paper, unless they should find that an implied contract as defined in other instructions was made. The court then failed to give any instructions telling the jury what constituted an implied contract, and refused the instructions offered by the plaintiff which would have told the jury, in effect, what would constitute an implied contract. The evidence offered by plaintiff that defendant admitted that his family read the paper was proper for the consideration of the jury as tending to show an implied contract to pay for the same.

*Thomas J. Smith* for respondent.

(1) The appellant in this case by sending the paper through the mail to the respondent without the direction or request of respondent, could not make respondent his debtor. Allen v. Richmond College, 41 Mo. 308; Painter v. Ritchey, 43 Mo. App. 112; Hiemenz v. Goerger, 51 Mo. App. 589; Hartnett v. Christopher, 61 Mo. App. 66. (2) The appellant made no objection to any of the instructions given by the court, either of its own motion or upon behalf of the defendant, but only excepted to the giving of the one instruction asked on behalf of the defendant and those given of the courts on motion. This was not sufficient. He was required both to object to the giving, and to except after the same had

been given. Sheets v. Ins. Co., 226 Mo. 613; Welch v. K. C. Midland Coal & Mining Co., 132 S. W. 49; Stevens v. Knights of Modern Maccabees, 132 S. W. 757; Monroe v. United Rys. Co., 132 S. W. 645. (3) In the motion for new trial the appellant did not complain of any instructions given by the court of its own motion, but only of the instruction given on behalf of defendant. Not having done this, he cannot be now heard to complain of the giving of such instruction by the court below. Webb v. Allington, 27 Mo. App. 559; Roberts v. Boulton, 56 Mo. App. 405; Rubber Co. v. Rubber Co., 74 Mo. App. 266. (4) Appellant having denied that the respondent ordered him to discontinue the sending of the paper to respondent solely and only upon the ground that his universal rule was to discontinue on order, and admitting that he had no recollection of the fact at all, it was competent to prove by other witnesses that he had failed to discontinue their papers on order, as showing that the appellant's rule was not universal as claimed by him, and thereby to discredit his testimony to the effect that no order to discontinue had been given.

ELLISON, J.—This action was brought on an account for the subscription price of a newspaper. The judgment in the trial court was for the defendant.

It appears that plaintiff was publisher of a newspaper in Butler, Mo., and that defendant's father-in-law subscribed for the paper, to be sent to defendant for two years, and that the father-in-law paid for it for that time. It was then continued to be sent to defendant, through the mail, for several years more. On two occasions defendant paid a bill presented for the subscription price, but each time directed it to be stopped. . Plaintiff denies the order to stop; but for the purpose of the case we shall assume that defendant is correct. He testified that notwithstanding the order to stop it, it was continued to be sent to him and he con-

tinued to receive and read it, until finally he removed to another state.

We have not been cited to a case in this state involving the liability of a person who, though not having subscribed for a newspaper, continues to accept it by receiving it through the mail. There are, however, certain well understood principles in the law of contracts that ought to solve the question. It is certain that one cannot be forced into contractual relations with another and that therefore he cannot, against his will, be made the debtor of a newspaper publisher. But it is equally certain that he may cause contractual relations to arise by necessary implication from his conduct. The law in respect to contractual indebtedness for a newspaper is not different from that relation to other things which have not been made the subject of an express agreement. Thus, one may not have ordered supplies for his table, or other household necessities, yet if he continue to receive and use them, under circumstances where he had no right to suppose they were a gratuity, he will be held to have agreed, by implication, to pay their value. In this case defendant admits that notwithstanding he ordered the paper discontinued at the time when he paid a bill for it, yet plaintiff continued to send it and he continued to take it from the postoffice to his home. This was an acceptance and use of the property, and there being no pretense that a gratuity was intended, an obligation arose to pay for it.

A case quite applicable to the facts here involved arose in Fogg v. Atheneum, 44 N. H. 115. There the *"Independent Democrat"* newspaper was forwarded weekly by mail to the defendant from May 1, 1847, to May 1, 1849, when a bill was presented which defendant objected to paying on the ground of not having subscribed. Payment was, however, finally made and directions given to discontinue. The paper changed ownership and the order to stop it was not known to the new pro-

156 App.—19

prietors for a year; but after being notified of the order, they nevertheless continued to send it to defendant until 1860, a period of eleven years, and defendant continued to receive it through the postoffice. Payment was several times demanded during this time, but refused on the ground that there was no subscription. The court said that: "During this period of time the defendants were occasionally requested, by the plaintiff's agent, to pay their bill. The answer was, by the defendants, we are not subscribers to your newspaper. But the evidence is, the defendants used, or kept the plaintiff's . . . newspapers, and never offered to return a number, as they reasonably might have done, if they would have avoided the liability to pay for them. Nor did they ever decline to take the newspapers from the postoffice." The defendant was held to have accepted the papers and to have become liable for the subscription price by implication of law.

In Ward v. Powell, 3 Harrington 379, it was decided that an implied agreement to pay for a newspaper or periodical arose by the continued taking and accepting the paper from the postoffice; and that "If a party without subscribing to a paper, declines taking it out of the postoffice, he cannot become liable to pay for it; and a subscriber may cease to be such at the end of the year, by refusing to take the papers from the postoffice, and returning them to the editor as notice of such determination."

In Goodland v. LeClair, 78 Wis. 176, it was held that if a person receives a paper from the postoffice for a year without refusing or returning it, he was liable for the year's subscription. And a like obligation was held to arise in the case of Weatherby v. Bonham, 5 C. & P. 228.

The preparation and publication of a newspaper involves much mental and physical labor, as well as an outlay of money. One who accepts the paper by continuously

taking it from the postoffice, receives a benefit and pleasure arising from such labor and expenditure as fully as if he had appropriated any other product of another's labor, and by such act he must be held liable for the subscription price.

On the defendant's own evidence plaintiff should have recovered. The judgment will therefore be reversed and the cause remanded. All concur.