NEW YORK CENTRAL RAILROAD CO. v. THE
TALISMAN, LONG ISLAND R. CO., CLAIMANT.

No. 286.   Argued January 11, 12, 1933.—Decided February 6, 1933.

*Mr. Leonard J. Matteson,* with whom *Messrs. D. Roger
Englar* and *Clive C. Handy* were on the brief, for peti-
tioner.

*Mr. Chauncey I. Clark* for respondent.

Mr. Justice Butler delivered the opinion of the Court.

This is a suit in admiralty brought by petitioner in the southern district of New York against the tug Talisman, of which respondent is the owner and claimant, to recover damages to carfloat No. 37 belonging to petitioner. The case was submitted on an agreed statement of facts.

Petitioner and respondent were common carriers engaged in interstate commerce. The damages resulted from a collision October 29, 1926, between petitioner's carfloat No. 58, while in tow of the Talisman, and carfloat No. 37, which was moored in a carfloat bridge of respondent's terminal at Long Island City. The collision was occasioned solely by the negligence of the Talisman and those in charge of her. Respondent received No. 37 at the terminal named in connection with the transportation in interstate commerce of freight cars and freight. Petitioner had received by registered mail from respondent a notice dated July 31, 1920.

"We beg to inform you that it has become necessary to cease being responsible for vessels lying at our terminals, Long Island City and Bay Ridge, Brooklyn. On and after September 1, 1920, the following conditions will apply to all floating equipment lying at Long Island Railroad Company terminals, Long Island City and Bay Ridge, Brooklyn: All vessels, floats, craft or any kind of floating equipment, lying at the Long Island Railroad terminals, Long Island City or Bay Ridge, Brooklyn, are at the risk of the vessel, float or craft. This company will not be responsible for any damage received by said floating equipment while lying at the above mentioned terminals, whether said damage arises through the negligence of this company and/or its employees, or through other causes. This notice applies to all floats whether in charge of a floatman or not, while lying moored at the Long

Island Railroad Company terminals, Long Island City or Bay Ridge, Brooklyn."

Petitioner had made no reply to the notice.

The district court held respondent liable. 52 F. (2d) 691. The Circuit Court of Appeals reversed. 57 F. (2d) 144.

Petitioner and respondent were connecting carriers. As such, each, in the discharge of its duties to the public, owed to shippers of freight in its possession destined to points on or routed over the railway of the other the duty to deliver to the connecting line for further transportation; and each was correspondingly bound to receive and carry. *Railroad Co.* v. *Manufacturing Co.*, 16 Wall. 318, 324. *Myrick* v. *Michigan Central R. Co.*, 107 U. S. 102, 106. *Dunham* v. *Boston & Maine R. Co.*, 70 Me. 164, 170. *Atchison, T. & S. F. R. Co.* v. *Denver & N. O. R. Co.*, 110 U. S. 667, 683. *Andrus* v. *Columbia & Okanogan Steamboat Co.*, 47 Wash. 333, 338; 92 Pac. 128. Such carriers were not bound under the common law to make track connections. *Wisconsin, M. & P. R. Co.* v. *Jacobson*, 179 U. S. 287, 296. *Atchison, T. & S. F. R. Co.* v. *Denver & N. O. R. Co.*, *supra.* The Interstate Commerce Act empowered the commission to require such connections. *Alabama & V. Ry. Co.* v. *Jackson & E. Ry. Co.*, 271 U. S. 244.

And § 3 (3) provides that all carriers shall, according to their respective powers, " afford all reasonable, proper, and equal facilities for the interchange of traffic between their respective lines." Respondent's terminal and carfloat bridge constituted the place and means long used for such interchange. It is not suggested that, at the time of the collision, petitioner's carfloat was not where respondent intended to have it brought or that petitioner could have selected any other place or means. It was not free elsewhere to tender the traffic. In view of the

duty put upon respondent by the policy of the law, it was bound to exercise reasonable care for the safety of petitioner's carfloat while engaged in delivering and receiving traffic. *Bennett* v. *Railroad Co.,* 102 U. S. 577. *Woodruff* v. *Painter & Eldridge,* 150 Pa. 91, 96; 24 Atl. 621.

But respondent insists that, if dissatisfied with the terms of the notice it sent, petitioner's remedy was to appeal to the Interstate Commerce Commission for relief under par. (4) of § 3. That position is not tenable. The place and bridge furnished by respondent for interchange are not terminal facilities within the intention of that paragraph. The expression " terminal facilities, including main-line track or tracks for a reasonable distance outside of such terminal, of any carrier " does not include mere interchange facilities. Petitioner's use of respondent's property involved no taking requiring the ascertainment of just compensation as provided in that paragraph. *Pennsylvania Co.* v. *United States,* 236 U. S. 351, 368. Moreover, the requirement in par. (3) that carriers shall furnish " equal " facilities for interchange negatives the suggestion that par. (4) applies.

For the better discharge of their duties, these public servants were required by the Act to coöperate in effecting interchange of traffic. Respondent could not by its own act relieve itself of any duty imposed upon it by law or arising out of the nature of its undertaking in respect of the required interchange. It was powerless by mere announcement to fix the terms on which it would participate with petitioner and other connecting carriers in effecting such interchange. It cites *Sun Oil Co.* v. *Dalzell Towing Co.,* 287 U. S. 291. But the towage company was not bound to render the service there involved and was not a common carrier or liable as such. That case, and the cases cited which arose under contracts for towage, plainly have no application to the question under consideration. Here

the respondent's duty to petitioner arose out of the law governing its occupation. Petitioner made no reply to the notice sent it by respondent. In view of the character of respondent's duties, no contract can be implied from petitioner's silence. That quite as reasonably may be deemed to imply, if any implication is to be drawn, that petitioner intended to stand on its rights and not to surrender them. And, as respondent was not in position to dictate terms, petitioner was under no obligation to repudiate those proposed or to reply in any manner to the notice. *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How. 344, 383. *Hollister* v. *Nowlen*, 19 Wend. 234, 242, 246. *York Company* v. *Central Railroad*, 3 Wall. 107, 113. *Railroad Co.* v. *Manufacturing Co., supra*, 329. *Judson* v. *Western Railroad Corp.*, 6 Allen 487, 490–491. *Gott* v. *Dinsmore*, 111 Mass. 45, 52.

*Reversed.*