**BURNS BROS. v. The CARFLOAT CENTRAL R. R. OF NEW JERSEY NO. 42. The BURNS BROS. 77.**

**No. A. 19326.**

United States District Court
E. D. New York.
May 27, 1952.
On Motions June 27, 1952.

Alexander & Ash, New York City, by Sidney A. Schwartz, New York City, for libelant.

John J. McElhinney, New York City, for respondent.

BYERS, District Judge.

This cause can be thought of as a re-incarnation of the case between the same parties reported in Burns Bros. v. Long Island R. Co., 2 Cir., 176 F.2d 406, modifying Burns Bros. v. Erie R. Co., D.C., 79 F.Supp. 948, and has for its object the recovery of a decree against the Central Railroad Company of New Jersey establishing secondary liability *in rem*. The cause in its original aspect was *in personam* and the libel was filed August 23, 1945 and came to trial March 25, 1947, somewhat in piecemeal, the last testimony seemingly being taken on May 26, 1947. On June 1, 1948 the cause was decided in this Court, an interlocutory decree having been signed on June 24, 1948.

About nine months later, the Long Island Railroad Company filed its petition for reorganization under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. The appeal from the interlocutory decree above referred to was reached for argument on June 14, 1949, nearly three months after the inception of the reorganization proceeding. The decision on appeal modified

that made in the District Court to the extent of relieving the Central Railroad Company of New Jersey and its trustees from liability *in personam* since that railroad was not shown to have been negligent.

A petition for rehearing was filed and denied, 176 F.2d 950 in an opinion containing the following:

"* * * limited to the question of the secondary liability of Central on principles applicable to a proceeding in rem against its carfloat. Such action has been prompted by the fact that Long Island has become insolvent since the inception of this suit and proceedings for its reorganization are pending in the District Court for the Eastern District of New York. As a consequence there is a possibility that the decree against Long Island will not be fully satisfied.

"Had this suit been brought in rem, it is apparent that the Central's carfloat could, and should, have been held secondarily liable. The Willie, 2 Cir., 231 F. 865, 867–868. But there seems to be an insuperable obstacle in the way of imposing such liability now."

Reference is then made to the reorganization proceedings as to the Central and to the fact that if amendments to the libel could be made as desired by the libelant, no decree *in rem* could be entered since there is no showing of jurisdiction over the vessel.

Obviously no issue of fact is now presented since at this trial both sides rested upon the record heretofore made, which means that no factual discussion or findings would be in order. The controversy, therefore, is limited to questions of law, namely, (a) *res judicata,* and (b) laches.

However inviting from the philosophical standpoint a discussion might be as to the precise impact of the decree on mandate (which conforms to the decision of the Court of Appeals), on the narrow question of whether the libelant is entitled to prevail because the present issues have already been determined between the same parties, it would be scarcely profitable to pursue it for the sake of reaching a conclusion involving a possible distinction between the legal remedies *in personam* and *in rem,* as administered in admiralty.

Ever since The China, 7 Wall. 53, 74 U.S. 53, 19 L.Ed. 67, it has been recognized in the United States that a liability *in rem* can be enforced against an offending vessel although her owners would not be answerable *in personam.* A reading of the arguments and opinions in that case, as they discuss the development of the law in England and in this country, and the conflict of views so revealed, is a rewarding experience. Such a liability was imposed in The Willie referred to in the opinion of the reviewing court on rehearing in this cause, and in view of the expression above quoted from that opinion, it is apparent that the Central Carfloat No. 42 was said to be an offending vessel with respect to the libelant's Coalboat Burns Bros. 77 on April 1, 1945.

So much being clear, the only duty that confronts this Court is to follow the pronouncement of the Court of Appeals, without stopping to consider whether in the precise sense a decision in a *personam* cause can be deemed to establish *res judicata* in a cause *in rem,* but one disaster being involved.

Whether laches should be attributed to the libelant is largely clarified by the conduct of the parties in submitting this cause on the record made in the earlier litigation; by so doing they have tacitly agreed that neither has been deprived of relevant testimony by reason of the lapse of time.

Thus the question narrows itself to this: The present libel was filed October 12, 1949—which was 27 days after the date of the decision on the petition for rehearing above referred to. In view of the lapse of time between the pendency of the reorganization proceedings concerning the Central, which had continued since 1939, six years prior to the date of this collision, and until October 1, 1949, was there such a failure on the part of the libelant to seek the redress described in the pending libel as to afford the Central the defense of laches?

In this connection it should be stated that no application was made to the District Court in New Jersey to lift the stay against all suits and causes which was granted by that Court October 30, 1939 and which, perhaps, would have operated to defeat the arrest of Carfloat No. 42 in these waters at the time of the collision or shortly thereafter. It seems unnecessary now to discuss this somewhat obscure question of law (Benedict, 6th Ed., § 17). At best, decision would merely suggest what might or should have been done, since it seems scarcely fair to penalize the libelant for not having made an application which the District Court in New Jersey might or might not have entertained; cases have occurred wherein such a stay has been lifted by a reorganization court in order that an asserted maritime lien could be adjudicated in another district, and I should suppose that such a practice would commend itself to most reorganization courts. However, this libelant was indeed confronted by a stay, and if an unsuccessful application to lift had been made, it (libelant) would have been no better off than it was at the termination of the reorganization proceedings in the District Court in New Jersey. If such an application had been successful, and libelant had been in a position to seek its remedy *in rem* prior to the date of the filing of this libel, some time might have been saved; however as has been said, only the same evidence would have been relied upon, and therefore it does not seem that the equitable defense of laches should be deemed applicable particularly in view of the language of Title 11 U.S.C.A. § 205 subs. b and j.

Since the libelant merely seeks a decree declaring secondary liability *in rem*, as to which enforcement may never be required, no reason has been shown why such a decree should not be granted and, accordingly, one may be taken, to be settled on notice.

## On Motions.

Following the decision filed herein on May 27 last, two motions are now before the Court:

1. A libellant's motion to consolidate this cause with the earlier one referred to in the said opinion. Burns Bros. v. Erie R. Co., D.C., 79 F.Supp. 948.

2. A motion by claimant-respondent to reopen the cause to enable it to offer proof in behalf of its second defense which in effect pleads the bar of an order of the reorganization court having charge of the reorganization proceedings of the Central Railroad of New Jersey, being Order No. 605, dated August 30, 1949.

That motion was unopposed and has been granted. The effect thereof will have to be dealt with.

As to the first, I am not satisfied that the discretionary power to consolidate under Admiralty Rule 13 of this Court, 28 U.S.C.A., should be exercised.

While the framing of a decree to provide solely for a secondary liability may not present an every day task of draftsmanship, it is not thought to lie beyond the competence of counsel. The Court has no objection to the repetition therein of such provisions of the interlocutory decree in the first cause, as may be deemed necessary to delineate the complete scope of the decision in this one, since the decree will have to be settled in any case. The motion to consolidate will be denied.

As to the result of the consideration of such matters as are now imported by reason of the order reopening the cause, there is this to be said:

Seemingly it is urged by the claimant-respondent that the decision of the Court of Appeals (as cited in the opinion of May 27, 1952) must be deemed inconclusive as to the liability *in rem* for the reason that the said Order No. 605 necessarily erects a bar to the adjudication of this cause.

It is necessary to remember that the original cause named the trustees of the Central as respondents, and that the collision between the Carfloat 42 and the libellant's barge 77 occurred April 1, 1945, during the pendency of the reorganization proceedings, which fact for present purposes justifies the statement that a very formal claim was made against the trustees and was actively litigated, and that a decree holding

them jointly liable with the Long Island Railroad Company was entered. That decree remained in effect until the decision of the Court of Appeals was handed down exonerating the trustees, on August 8, 1949. On August 18, 1949, a petition for rehearing was filed and that petition remained pending until it was denied on September 26, 1949, Burns Bros. v. Long Island R. Co., 2 Cir., 176 F.2d 950. (Amended Answer, Par. LXVIII). This means that when Order No. 605 was signed (August 30, 1949), the trustees were chargeable with knowledge that the said claim arising in connection with their administration was contemplated by that provision of Order 605 which reads:

"12. The Debtor is further directed to:

"(a) Pay, satisfy and discharge all indebtedness, obligations and liability of the Trustee arising on or after October 30, 1939 in respect of the operation or administration by the Trustee of the property of the Debtor in these proceedings to the extent that the same shall not have been paid or discharged by the Trustee on or before the restoration date."

Saturday, October 1, 1949, was fixed as the restoration date.

The clause barring and foreclosing all claims and demands as of the latter date against the debtor or its property, according to Paragraph 15 of the said Order, is thought not to operate as the claimant-respondent argues, even though there is a legal distinction between torts committed by the trustee, and maritime torts committed by a carfloat which he was operating. The language which has heretofore been quoted from the opinion of the Court of Appeals denying the petition for rehearing is not thought to render valid the argument now under examination.

Seemingly on October 2, 1950 the United States District Court for the District of New Jersey, being the Court in which the Central reorganization proceedings were conducted, granted this libellant's application for leave to institute this proceeding, and thereafter the libel and later an amended libel were filed, although there is no al-

legation in the pleadings on that subject, and the accuracy of the foregoing statement is assumed for the purposes of this decision.

The granting of that application by the reorganization court was consistent with the view that there was then no legal obstacle to the maintenance of this cause presented by the terms of Order No. 605; whether or not it was intended by the granting of that order to sanction this litigation, it is certainly true that the order was not refused for the reason now urged by claimant-respondent.

It is therefore concluded that the evidence brought into the cause by the motion first above referred to does not require any modification of the views heretofore expressed as to the right of the libellant to procure a decree establishing secondary liability on the part of the Carfloat 42, which means that the decision heretofore made will be adhered to. Settle order.