Joseph L. **PORTWOOD** and Betty Portwood, individuals, trading and doing business as the Portwood Company, Petitioners,

v.

The **FEDERAL TRADE COMMISSION**, Respondent.

No. 9983.

United States Court of Appeals
Tenth Circuit.

Nov. 14, 1969.

Malcolm W. deVesty (Franks & de-Vesty, Albuquerque, N. M., were with him on the brief) for petitioners.

Karl H. Buschmann (James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, and Alvin L. Berman, Atty. of the Federal Trade Commission, were with him on the brief) for respondent.

Before JONES,* Senior Judge, United States Court of Claims, and LEWIS and HOLLOWAY, Circuit Judges.

* Sitting by designation.

HOLLOWAY, Circuit Judge.

The Federal Trade Commission found that petitioners committed acts of unfair competition and unfair or deceptive acts and practices in commerce in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a) (1), by the use of certain mailings in conducting their philatelic stamp business. A cease and desist order was issued prohibiting several types of collection notices and requiring certain disclosures in connection with other communications. This petition challenges the Commission's findings and seeks to set aside portions of the order.

There is no material dispute as to the evidentiary facts. Joseph L. Portwood and his wife Betty Portwood operate the Portwood Company (hereafter Portwood), a philatelic stamp business. Portwood operates from a small office in Albuquerque, New Mexico, dealing almost exclusively by mail. The company regularly obtained lists of prospects from professional sellers of mailing lists, from other customers and dealers and previously by advertising also. The proof showed that Portwood mailed to these prospects a free gift of stamps along with an "approval book" of stamps. These approval books were priced at $6.95 each. Sales from Portwood's various mailings averaged $3.00. Portwood sometimes mailed more expensive selections to previous purchasers.

The approval book mailing was accompanied by an instrument designated as an "Approval Invoice" which stated the price of the approval stamps and said: "Please return this invoice with your payment." A return envelope with 5¢ postage on it also went with this mailing. If there was no reply within 30 days harsher notices followed. Portwood testified that there was no "cold-blooded routine" for these later communications and that he or his wife decided on which ones to use. In any event if the original mailing was unsuccessful the record shows a frequently used series of subsequent notices.

After 30 days Portwood sent out a printed postcard inquiring about the stamps.[1] An identical card was repeated 30 days later. There or four weeks after the second card a letter inquired: "This material was forwarded to you on approval, for your examination, with the understanding[2] that returns would be made promptly. Will you kindly give this matter your immediate attention so that we may clear your account." A month later Portwood again wrote that it had had no response and said: "You have our property in your possession and you have had it for a long time. What do you intend to do about paying for it?" About six months after the initial mailing a final letter informed the prospect that unless payment or a return of the stamps was made by a given date "your account will be turned over to our attorneys for immediate action." However Portwood had never employed an attorney for collection although some accounts had been turned to a national collection agency. The letter referring to legal action was discontinued before the hearing.

These mailings were sent to Portwood's current or active file of about 6,000 names. Portwood estimated that about 99% of those on his lists were stamp collectors. He testified that not more than a few hundred in the current file were persons who had not made a previous purchase and "quite a few customers" had been buying stamps since 1948 when the business was established. Most of the prospects did not require the collection efforts described. Approxi-

---

1. The postcard reads:
   "Just a reminder * * * That we have not heard from you with regard to the selection of stamps sent to you some time ago * * * Will you please give this matter your prompt attention?"

2. The record shows that the word "understanding" had been changed to "expectation" before the hearing by the examiner.

mately 30% of the prospects made a purchase. Altogether about 80% of the recipients paid for or returned the stamps without any follow-up notices. Approximately another 10% remitted after the first or second reminder. Portwood estimated that about 5% or 6% made no return. Many prospects requested that they receive no further mailings. Often Portwood ignored these requests and continued sending stamps. In defending his methods generally he testified that if he only sent out advertising soliciting purchases it would practically close his business.

Following an examiner's hearing and decision the Commission found that Portwood's communications were false, misleading and deceptive and had the capacity to mislead and coerce acceptance of and payment for stamps. The examiner had not thought the original mailing or the first two postcards were objectionable but he had found deceptive representations and coercion in the later notices. However the Commission found that all communications, whether directed to old or new customers, were false, misleading and deceptive. The vice found was, among other things, that they created a false impression that money was due, and that there was some contract or agreement to pay for or return the stamps. Based on its evidentiary and ultimate findings against Portwood the Commission issued a cease and desist order which is unchallenged in part.[3] The portions of the order sought to be set aside here are paragraphs 5 and 8 which prohibit:

"(5) Sending any communication, (including bills, invoices, reminders, letters, or notices) to, or making any demands or requests of, any person that seeks to obtain payment for or the return of merchandise sent without a prior express written request by the recipient, unless such communication clearly and conspicuously states all of the following:

"(a) that the merchandise is being sent to the recipient unsolicited,

"(b) that the recipient is under no obligation either to return the merchandise to the sender, or to preserve it intact, and

"(c) that he is required to pay for the merchandise only if he decides to purchase it.

\*   \*   \*   \*   \*   \*

"(8) Sending merchandise without first obtaining a specific order therefor after respondents have been notified by the mailees that shipments of unordered merchandise are to be discontinued."

First Portwood challenges the Commission's findings that the communications were false and deceptive. It says the exhibits did not support the inferences drawn and that a conflict with some of the examiner's findings vitiates those of the Commission.

It is undisputed that the communications described were used. The approval invoice and the follow-up inquiries and notices were sent to several hundred persons not having previous contacts with Portwood as well as to the larger number who had. On this and other proof the Commission found that the communications misrepresented and had the capacity to misrepresent that money was due, that some agreement obligated the prospect to pay for or return the stamps, and that if one or the other was not done the matter would be referred to attorneys.

■■■■ The findings are supported by substantial proof. The capacity for such misrepresentations may reasonably be inferred from Portwood's communica-

3. The unchallenged portions of the order directed that Portwood cease and desist from misrepresenting the legal relationship or legal obligation between the mailees and Portwood; from using threats, intimidation or coercion to compel the mailees to perform acts or refrain from acts that they had no legal obligation to do or not to do; from the use of subterfuge or coercion in selling; and from misrepresenting the legal consequences of failure to pay for or return merchandise sent without a prior order or in spite of directions not to send merchandise.

tions and proof of actual deception is not required where the capacity to deceive is revealed by the exhibits. Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 81, 54 S.Ct. 315, 78 L.Ed. 655 (1934); Double Eagle Lubricants, Inc. v. Federal Trade Commission, 360 F.2d 268 (10th Cir. 1965). Moreover, as we discuss below, the Commission's findings of deception as to legal duties were based on generally applied legal principles.[4] There is some conflict between the examiner's findings which viewed the approval invoice and the first two postcards as innocuous and the finding of the Commission that all the communications made deceptive misrepresentations.[5] On the whole record we conclude that the Commission's findings were made on permissible inferences from admitted facts and were supported by substantial evidence so as to be binding on the court. 15 U.S.C. § 45(c); Federal Trade Commission v. Pacific States Paper Trade Association, 273 U.S. 52, 47 S.Ct. 255, 71 L.Ed. 534 (1927); Double Eagle Lubricants, Inc. v. Federal Trade Commission, supra.

Secondly Portwood objects to paragraph 5 of the order. The argument is that this portion of the order is contrary to established legal principles in requiring disclosure that "* * * the recipient is under no obligation either to return the merchandise to the sender, or to preserve it intact, and * * * that he is required to pay for the merchandise only if he decides to purchase it * * *." Among other things Portwood argues that since most of its mailings go to customers with whom it has done business before, such a statement ignores legal relationships that may arise from past dealings as well as those resulting from actual use or destruction of its stamps.

We agree that in part petitioners are right in saying that the order is legally incorrect. An acceptance of an offer of sale may be manifested by an exercise of dominion over merchandise such as by using it.[6] Since paragraph 5 seeks to compel accurate disclosures of such legal rights and duties of the recipient,[7] subparagraph (c) should recognize liability arising from use of the merchandise, as well as from its purchase.

---

4. See authorities discussed in connection with paragraph 5 of the order, infra at p. 423.

5. Petitioners properly point out that the examiner's findings are part of the entire record that may be considered in testing the Commission's findings. See American Cyanamid v. Federal Trade Commission, 363 F.2d 757 (6th Cir. 1966). However, if the record as a whole contains substantial evidence supporting the Commission's findings, they stand despite the conflict. See Double Eagle Lubricants, Inc. v. Federal Trade Commission, supra.

6. See Austin v. Burge, 156 Mo.App. 286, 137 S.W. 618 (1911); Prospect News Printing Co. v. Swindle, 15 S.W.2d 922 (Mo.App.1929); Farmers' Handy Wagon Co. v. Newcomb, 192 Mich. 634, 159 N.W. 152 (1916); Restatement, Contracts § 72(2); 1 Williston on Contracts § 91D, pp. 333–334; 1 Corbin on Contracts § 75, p. 319; 17 C.J.S. Contracts, § 41e, p. 670; and cf. Grouf v. State National Bank of St. Louis, 76 F.2d 726 (8th Cir. 1935); and Russell v. Texas Co., 238 F.2d 636 (9th Cir. 1956), cert. denied,

354 U.S. 938, 77 S.Ct. 1400, 1 L.Ed.2d 1537 (1957).

However, it should be noted that some States have recently provided by statute that unsolicited merchandise received through the mail may be used or disposed of without payment. See New York General Business Law, § 396(2) (McKinney's Consol.Laws, c. 20, 1968); Rev.Code of Washington Annotated, § 19.56.020 (L.1967, chap. 57, § 1); Smith-Hurd Illinois Annotated Statutes, Chap. 121½, § 351 (L.1965); and Annotated Code of Maryland, Art. 83, § 21A(a) (L.1968). Since paragraph 5 seeks an accurate general statement of legal relations appropriate for broad mailings, consideration should be given to such law in various jurisdictions. See also the Postal Revenue and Federal Salary Act of 1967, 39 U.S.C. § 4001, prohibiting mailing of bills, invoices or statements, or instruments appearing to be such, unless affirmative disclosures are made that the same are solicitations.

7. See opinion of the Commission at pp. 12 and 15, F.T.C..

Subparagraph (b) of paragraph 5 says the recipient has no obligation to preserve the merchandise intact. To support this provision the Commission points to the four State statutes cited above,[8] but shows no authorities otherwise supporting the proposition. The duty of care for unsolicited merchandise intentionally imposed on the recipient appears unsettled. We find only varying statements of some general duty of care of gratuitous bailees.[9] Since the Commission's proposition is not generally supported, we feel it may not fairly be required as a disclosure of legal rights and duties. Alternatively the Commission argues that State law is not controlling in determining unfair acts and practices under the Act. However, its order and opinion show that paragraph 5 was aimed at an accurate statement of legal rights and duties which do rest on State law. Since State law does not support or settle this particular proposition, it should not be required as a disclosure. Thus, we conclude that subparagraphs (b) and (c) should be modified to require the following disclosures:

> "(b) that the recipient is not obligated to return the merchandise, and
>
> (c) that he is required to pay for the merchandise only if he decides to purchase it or uses it, and not then if the law of the recipient's State permits him to use unsolicited merchandise without payment." [10]

However Portwood asks that all of paragraph 5 of the order be eliminated, claiming that it violates established legal principles. It says that since many of the mailees are customers who have previously purchased stamp selections, their retention of the stamps alone may be an acceptance of an offer so that payment is due. The record shows only that most of the 6,000 prospects on the current or active mailing list have made some previous purchases. We conclude that there was no showing that Portwood's customers had such past dealings that acceptances were made by silence.[11] The record did not show standing offers to purchase and circumstances justifying a reasonable conclusion that acceptances occurred by silence, as in Hobbs v. Massasoit Whip Co., 158 Mass. 194, 33 N.E. 495 (1893), and similar cases relied on. Moreover, subparagraphs (b) and (c) of paragraph 5 as modified do not conflict with principles relied on by petitioners. They do not exclude possible liability if the recipient's acts amount to an acceptance of the stamps or if the recipient

**8.** See the four State statutes cited in note 6, supra. The Commission also points to a California statute prohibiting solicitations appearing to be invoices and requiring notice that payment for the unsolicited goods is not required unless they are accepted. See Cal.Civil Code, § 1716.

**9.** See Newman v. Clayton F. Summy Co., 133 F.2d 465 (2d Cir. 1942); Altman v. Aronson, 231 Mass. 588, 121 N.E. 505, 4 A.L.R. 1185 (1919); Restatement, Contracts, § 72(2) and illustration 7 thereto; Restatement, Torts 2d, § 235 (1) and comment (b) thereto; and 9 Williston on Contracts, 3d ed., § 1038A, pp. 904–905; cf. Russell v. Texas Co., supra, 238 F.2d at 642–643.

**10.** In the order proposed by the examiner the portion dealing with this disclosure suggested the word "uses," while the Commission's order adopted the word "purchase." We conclude that both should be included.

**11.** Under general principles of contract law an agreement to pay for or return goods would not arise by the mere receipt of a shipment of goods followed by silence. See New York Central R. R. v. The Talisman, 288 U.S. 239, 243, 53 S.Ct. 328, 77 L.Ed. 721 (1933); Truscon Steel Co. v. Cooke, 98 F.2d 905, 911 (10th Cir. 1938); Columbia Malting Co. v. Clausen-Flanagan Corp., 3 F.2d 547, 551 (2d Cir. 1924); Bank of Buchanan County v. Continental National Bank of Los Angeles, 277 F. 385, 390 (8th Cir. 1921); Albrecht Chemical Co., Inc. v. Anderson Trading Corp., 298 N.Y. 437, 84 N.E.2d 625, 626 (1949); Solis-Cohen v. Phoenix Mutual Life Insurance Co., 413 Pa. 633, 198 A.2d 554, 555 (1964); Troyer v. Fox, 162 Wash. 537, 298 P. 733, 77 A.L.R. 1132 (1931); Standard Casualty Co. v. Boyd, 75 S.D. 617, 71 N.W. 2d 450 (1955); Leslie v. Brown Bros., Inc., 208 Cal. 606, 283 P. 936, 942 (1929); 1 Williston on Contracts, 3d ed., § 91; and 1 Corbin on Contracts, § 73.

uses the stamps, except where local law may permit use of unsolicited merchandise without liability.

Portwood also complains that paragraph 5 is too harsh and exceeds the Commission's power because it requires affirmative acts of disclosure.. We do not agree. As modified we conclude that the remedy chosen has a reasonable relationship to the unlawful practices found to exist, in which instance the courts do not interfere. Federal Trade Commission v. National Lead Co., 352 U.S. 419, 428, 77 S.Ct. 502, 1 L.Ed.2d 438 (1957); see also Federal Trade Commission v. Colgate-Palmolive Co., 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965). Moreover, the Commission has discretionary power to require affirmative disclosures. See *e. g.*, Keele Hair & Scalp Specialists, Inc. v. Federal Trade Commission, 275 F.2d 18 (5th Cir. 1960); Williams Co. v. Federal Trade Commission, 381 F.2d 884 (6th Cir. 1967); and Waltham Watch Co. v. Federal Trade Commission, 318 F.2d 28 (7th Cir. 1963), cert. denied, 375 U.S. 944, 84 S.Ct. 349, 11 L.Ed.2d 274 (1963).

■ Lastly, Portwood asks that paragraph 8 of the order (prohibiting, unless specifically requested to do so, the sending of stamps to persons who have requested that none be sent) be eliminated. On substantial proof it was found that Portwood mailed stamps on approval in spite of instructions by the mailees not to send stamps. And the finding was made that Portwood's acts—these and others—are unfair and deceptive acts prohibited by the statute. Portwood argues that it should nevertheless be permitted to try to revive interest by repeating its mailings. Again we conclude that this portion of the order was not an abuse of the Commission's discretion in choosing the means to abate the unlawful practice and should not be disturbed. Federal Trade Commission v. National Lead Co., supra; Federal Trade Commission v. Colgate-Palmolive Co., supra.

On consideration of petitioners' contentions discussed above, and remaining ones which are related and require no further discussion, we conclude that the order should be modified as provided in this opinion and that so modified, the order should be enforced.